[No. 20140. In Bank. — March 30, 1886.]

THE PEOPLE, RESPONDENT, v. W. B. TREADWELL,
APPELLANT.

EMBEZZLEMENT — ATTORNEY AT LAW. — An attorney at law is guilty of embezzlement if, after collecting money for his client, he appropriates it to his own use, without informing the client of the collection.

ID. — QUESTIONS FOR JURY — COLLECTION BY ATTORNEY — WHEN ESTOPPED TO DENY AGENCY. — In a prosecution for such an embezzlement, the question whether the attorney was acting in behalf of the person on whose account the money was collected, or whether such person had any property in the money, is for the jury; and if at the time the money was paid the attorney represented himself to the party paying as the agent of the person on whose account the payment was made, he is afterwards estopped to deny his agency.

ID. — INFORMATION — ALLEGATION OF AGENCY. — The information averred that the defendant received the money as the agent and servant of· one Haneke. Held, that the capacity in which the money was received was sufficiently alleged.

ID. — EMBEZZLEMENT OF PROCEEDS — INTEREST OF INDORSER — AVERMENT OF OWNERSHIP. — Where the indorsee of a promissory note gives the possession and control of it to the indorser, and he delivers it to an agent for collection, the interest of the indorser is sufficient to sustain an averment of his ownership in an information for the embezzlement of the proceeds of the note by the agent.

ID. — INSTRUCTIONS — ELEMENTS OF OFFENSE — FRAUDULENT INTENT. — In a prosecution for embezzlement, the court may instruct the jury as to what constitutes the offense, and as to the question of fraudulent intent as an element thereof.

ID. — MISNOMER OF PERSON INJURED. — Where the information in such a case correctly describes the person injured, an instruction given in the language of section 956 of the Penal Code, as to the effect of a misnomer in the information of the person injured, is immaterial.

ID. — INSTRUCTION NEED NOT BE REPEATED. — The refusal to give instructions which have already been given in substance is not error.

ID. — SPECIFICATION OF MONEY EMBEZZLED. — The particular kind of money embezzled need not be specified in the information or proved on the trial.

ID. — WITNESS FALSE IN PART — INSTRUCTION. — An instruction that "a witness false in one part of his testimony is to be distrusted in other parts" is not erroneous, although the word "willfully" is not inserted immediately before the word "false" in the instruction.

ID. — READING LAW-BOOKS TO JURY — IMMATERIAL ERROR. — The refusal of the court to stop the prosecuting attorney from reading, in the course of his argument to the jury, extracts from law-books, is not error, if it afterwards instructs the jury to disregard such extracts, and to be governed by the law as stated by the court.

ID. — POSTPONEMENT OF TRIAL — DISCRETION. — The postponement of the trial of a criminal case at the request of and to enable the prosecution to procure the attendance of its witnesses is not an abuse of discretion.

APPEAL from a judgment of the Superior Court of Yolo County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*F. E. Baker,* and *Harding & Goin,* for Appellant.

*Attorney-General Marshall, C. B. Darwin, F. S. Sprague,* and *J. Craig,* for Respondent.

McKEE, J. — The defendant in this action was convicted of embezzlement. He appeals from the judgment and an order denying his motion for a new trial.

The motion for a new trial was made upon the grounds that the verdict was against the evidence and contrary to law; and that the court, against the objections and exceptions of the defendant, erred in matters of law at the trial and in its instructions to the jury.

As laid in the information, the charge is, that on the 12th of December, 1883, the defendant was "agent and servant" of Charles Haneke; and in that capacity received from his principal, in trust for him, the sum of $2,102.60, lawful money of the United States, which, afterwards, on the 15th of August, 1884, in violation of his trust, he fraudulently and feloniously converted, appropriated, and embezzled.

Upon the first ground,—that the verdict was against evidence and contrary to law,—it is contended that there was no evidence establishing or tending to establish the allegation, as laid in the information, that the money charged to have been embezzled came into the hands of the defendant by virtue of his trust as the servant and agent of Haneke.

But admittedly, at the time of the transactions upon which the charge was founded, the defendant was a practicing attorney at law in the town of Woodland in Yolo County; and on the 12th of December, 1883, he received from Isaac Quinn $2,102.60 in payment of

a promissory note and mortgage, which Quinn had given to Carl Haneke as security for payment of the purchase-money due by him for a tract of land which he had beforehand purchased from Haneke; and upon receiving the money he gave Quinn a receipt for the same, worded as follows: —

"$2,102.61.        Woodland, Cal., Dec. 12, 1883.

"Received of Isaac Quinn twenty-one hundred and two dollars, to be applied in payment of his note of March 26, 1881, to Carl Haneke.

"W. B. Treadwell."

There is no question but that the money was received in payment of Quinn's note to Haneke; and if the defendant received it as the agent of Haneke, he, as an attorney at law, must have known that the law imposed upon him the duty of paying it over immediately to the person for whom he received it. But the evidence, without conflict, shows that he failed to inform Haneke of the payment of the note, that he concealed from him the fact of its payment, that he kept the money, and, as he confessed, used it for his own purposes. Upon those facts, if they were all the facts in the case, the verdict of embezzlement would be fully warranted.

But it was and is insisted that, at the time the defendant received the money, he was not, in fact or law, acting as the "agent and servant" of Haneke, and did not receive the money for him; but that he received it for a Mrs. Wise, to whom the note upon which the money was paid belonged, and that she authorized him to keep the money for her.

The evidence showed that Mrs. Wise was the daughter of Haneke, and it tended to show that she had advanced to her father the greater portion of the money for which the note collected by the defendant was given, and that her father, at a time when he was sick and expected to die, indorsed the note to her, so that she might receive and receipt for the moneys which were payable upon it;

that she informed the defendant, as her father's agent for the collection of the note, of the indorsement, and communicated with him in that capacity. Admittedly, it was also proved that Haneke had retained and employed the defendant in the year 1880 to collect the principal and interest of a note and mortgage upon a tract of land which had been sold to Quinn, the maker of the note; that the land at the time of the sale was subject to a trust deed in the nature of a mortgage, to secure an indebtedness due by a former owner of the land to the Sacramento Bank; that Quinn bought and entered upon the land as purchaser, subject to the trust deed; and that, while his note and mortgage were in the hands of defendant for collection, Quinn was unable to pay his own note or the indebtedness to the bank, and the bank was about to sell the land under its trust deed, unless payment of its demand was forthcoming. In that condition, Haneke, upon the advice and by the services of his attorney,—the defendant,—redeemed the land by paying the bank its demand. The bank reconveyed the land to him, and Quinn, by agreement with him, substituted for his note and mortgage a new note and mortgage trust deed, covering the principal sum of his old note, and the amount of money which Haneke had paid for redemption. This substituted note was as follows:—

"$2,450.                    WOODLAND, YOLO CO., CAL.,
                              "March 26, 1881.

" Three years after date, for value received, I promise to pay to the order of Carl Haneke, at the Bank of California, in the city and county of San Francisco, state of California, the sum of $2,450, in gold coin of the United States of America, with interest thereon in like gold coin at the rate of one per cent per month from date until paid. Interest to be paid every three months, and if not so paid, to be added to and become a part of the principal and draw like interest. And in case said interest be not paid

every three months, this note to be collectible at the option of the holder."

The new note and trust deed were delivered, and after the latter was recorded the old mortgage was released and returned to Quinn, but Haneke retained possession of the old note until Quinn paid a balance of interest due upon it, which was not carried into the new note.

The redemption by Haneke and the novation by Quinn were brought about by the services of the defendant; he draughted and supervised the execution and delivery of all the papers required to clothe the transaction with the forms of. law. For those services Haneke paid him on the day the transactions were closed, and that payment, it is insisted, ended the defendant's agency, or, as he expresses it in his testimony, given as a witness in his own behalf, "My employment ceased on the day when the deed of trust was drawn, and it was so stated at the time to the parties."

No doubt, when a person is employed to render special services as agent for another, that his agency ceases with performance of the services and payment of compensation therefor. (Sec. 2355, Civ. Code.) Between such persons there exists no longer the relation of principal and agent, unless there is an express understanding between them, or it may be implied from their subsequent acts and conduct that the person who acted in the original transactions upon the retainer and employment of the other continued to act in the same capacity in other matters arising out of the original transactions.

Whether the defendant continued to act for Haneke after payment for his past services, in collecting for him the interest and principal of the new note, was therefore a question for the jury. Upon that question there was a conflict of evidence. The jury found against the defendant, and there was abundant evidence to sustain the verdict. For it was proved that both the. old and the new notes of Quinn were left by Haneke in the hands of

the defendant, with authority to collect the interest due upon the old, and to forward the new to the Bank of California to be deposited, where, upon payment by Quinn of the interest, or any part of the principal, as it became due, the moneys were to be forwarded on account of Haneke. Under that authority the defendant forwarded to the bank the new note and the first installment of interest paid upon it, accompanied with a letter, as follows:—

"WOODLAND, CAL., June 24, 1881.

"BANK OF CALIFORNIA: I herewith inclose note of Isaac Quinn, payable to order of Carl Haneke (516 Filbert St., S. F.), to be held by you for collection; also check for $73.50, payable to order of Carl Haneke, forwarded by Mr. Quinn in payment of first installment of interest. I have notified Mr. Haneke of the forwarding of same. Please acknowledge receipt.

"Yours,

"W. B. TREADWELL.

"Any communication for Mr. Quinn may be addressed to my care at Woodland, Cal."

And on the 24th of September, 1881, he collected the old note, and gave Quinn his receipt as follows:—

"$62.18. WOODLAND, CAL., Sept. 24, 1881.

"Received of Isaac Quinn sixty-two and eighteen hundredths dollars, in full for balance due on promissory note, date of August 15, 1877, for $2,450.

"CARL HANEKE,

"Per W. B. TREADWELL."

Thereafter, with one or two exceptions, when he requested another to act for him in his absence from Woodland, he continued to receive from Quinn, upon the new note, the interest as it became due, and also part of the principal, which he forwarded regularly to the Bank of California, on account of Haneke, and this course of dealing was continued until the collection of the note in December, 1883.

Admittedly, at that time the defendant was not acting as the agent or servant of Quinn. He himself testified:—

"I was not representing Mr. Quinn at all. I was never the agent of Mr. Quinn at any time in the world. I did not assume to be Quinn's agent in taking his money"; and to the question, "How came you to take the money?" he answered, "I took it as the agent of Mrs. Wise." Whether the defendant took the money as the agent of Mrs. Wise or of Haneke was therefore squarely in issue.

To maintain the issue on his part, the defendant gave in evidence a letter, of which the following is a copy:—

"SAN FRANCISCO, March 27, 1883.

"MR. W. B. TREADWELL: *Dear Sir,*—During my father's recent dangerous illness, he deemed it advisable to arrange business matters to his satisfaction. He therefore indorsed and assigned the promissory note of the trust deed to me, and consequently I shall sign all receipts for interest or money sent as payment on note hereafter; the trustees have been duly notified of the change. Will you have the kindness to inform Mr. Quinn of the fact, and request him when he forwards interest again to have the check at the bank made payable to me. Father is much better, but being over eighty years of age, he does not feel able to have the cares of business thrust upon him.

"Hoping these few lines may find your family in good health, I remain,        Yours truly,
                              "HARRIET A. WISE."

But in connection with that letter there was given evidence tending to prove that the note was made up of two sums, viz., $1,650 and $800, the first of which had been advanced by the daughter to her father to enable him to redeem the land, and the second was what Quinn owed her father on the land on the old note and mortgage; that with the interest of these two sums of money the daughter supported herself and father, for she was

an invalid, and her father was very old and infirm; so
that when he became disabled by sickness from going to
the bank to get his interest as it was forwarded for him
by the defendant, she undertook the business; and recog-
nizing that the defendant was her father's attorney and
agent for that purpose, she communicated with him in
that capacity.    The indorsement of the note in the cir-
cumstances disclosed by her letter did not have the effect
of disturbing the legal relation between Haneke and the
defendant, or of revoking any authority he had to receive
and forward the money; and in fact he did receive and
forward as usual all payments made on the note until
the 12th of December, 1883, when Quinn paid him in
full the amount of principal and interest due upon the
note.

As a witness in his own behalf, the defendant says in
his evidence that Mrs. Wise knew that he had collected
the note; that at her request he concealed the fact from
her father, and agreed to keep possession of the money
until such time as either of them could safely reinvest it
so as to make it interest-bearing for her father's support;
and that in the mean time he should continue to forward
the interest as it would become due, so as to keep up the
appearance of non-payment.

But the evidence of his letters and conduct and acts
disproved such an arrangement.    It is clearly deducible
from his own testimony he knew that Mrs. Wise, not-
withstanding the indorsement of the note, had given full
control over it to her father after recovery from his sick-
ness, and that she recognized the defendant as her father's
attorney and agent for its collection.

Admittedly, after defendant received the money, he
never personally spoke to or saw Mrs. Wise.    In March,
1884, she fell sick of an incurable disease, and was taken
to the German Hospital in San Francisco, where she
lingered until October of that year, and died.    He says
in his testimony that he corresponded with her upon the

subject of the money. Not a scrap of writing from her, corroborant of his statement, was, however, produced. He claimed that her letters to him were lost; but neither was there found among the papers of Mrs. Wise, after her death, any letters from him.

Evidently, from his own testimony, he purposely concealed the payment of the note from Haneke and his daughter. Both were wholly ignorant of the fact, and when the first quarterly interest on the note for the year 1884 would have become due and payable if the note had not been paid, they became anxious about it, because it was not forwarded to the bank, and in their distress they got a lawyer to write about the interest to the defendant, who in reply wrote as follows:—

"Woodland, April 7, 1884.

"A. Morgenthal, Esq.: *Dear Sir,*—Yours of the 5th inst. at hand. When I telegraphed to you the other day I supposed that I could see Mr. Quinn by Thursday, but I found that he was away and out of the reach of letters. I suppose he has made a mistake as to the date. I have sent the amount to-day to the Bank of California out of my own money, as I know Mr. Quinn is all right. Please present my compliments to Mrs. Wise and Mr. Haneke, and tell them that I will look out for the matter myself hereafter.         Truly yours,

"W. B. Treadwell."

But the defendant did not forward the next quarterly interest which would have become due, and Haneke and his daughter caused a letter to be written to Quinn himself, threatening him to call in the principal of the note if he did not continue to pay the interest promptly; in answer to which Quinn wrote them in July, 1884, that he had paid the note in full to their attorney seven months before; and then, for the first time, the unspoken secret of the defendant was made known to Haneke and his daughter.

The evidence is overwhelming that Quinn, when he

paid his moneys upon the note, acted with the defendant as the attorney and agent of Haneke for the purpose of receiving and forwarding them to Haneke. He so understood it from Haneke and the defendant himself. He knew nothing of the indorsement of the note to Mrs. Wise, for the defendant had not informed him. The defendant was therefore, when he received the money from Quinn, in fact the agent, or acting as the agent, of Haneke, and he is estopped in law from denying that he was the agent. " In reason," says Bishop, in his work on Criminal Law, section 397, "whenever a man claims to be a servant while getting into his possession by force of this claim the property to be embezzled, he should be held to be such on his trial for the embezzlement. . . . . When a man has received a thing of another under the claim of agency, he cannot turn round and tell the principal asking for the thing, Sir, I was not your agent in taking it, but a deceiver and a scoundrel." (See *Ex parte Hedley*, 31 Cal. 108.)

The law of the question is, as Lord Mansfield put it to a party to an action, who attempted to deny the assumed authority under which he had done an act attended with fraud and falsehood, "No, it shall be as you represented it to be. No man shall set up his own iniquity as a defense, any more than as a cause of action."

It is claimed, however, that the information does not support the conviction because "it charges that defendant was the 'agent and servant' of Haneke, that this money came into his hands 'by virtue of his trust as said servant and agent,' and that the alleged conversion was 'not in the due and lawful execution of his trust as said agent and servant.'"

The jury must have found that the money came into the hands of the defendant as agent in fact, or as the pretended agent of Haneke, and therefore by virtue of the confidence reposed in him; and as in either position he is estopped from denying that he received the money

in that capacity, the averment in the information that he received it as "servant and agent," or as "agent and servant," is not a defective or insufficient averment of the capacity in which the money was received. True, the words "agent and servant" are not wholly synonymal; both, however, relate to voluntary action under employment, and each expresses the idea of service. The service performable by a servant for his employer may be inferior in degree to work done by an agent for his principal. A servant is a worker for another under an express or implied employment; so also is an agent, only he works, not only *for*, but *in the place of*, his principal. In the sense of service, an agent is the servant of his principal; therefore designating him in an information or indictment for embezzlement as agent and servant is not such a misnomer of his capacity as affects any of his substantial rights.

But that being so, it is insisted that Haneke, having indorsed and delivered the note to Mrs. Wise, had no property in the note or the money paid upon it which came into the hands of the defendant.

All the circumstances in connection with the indorsement and delivery of the note to Mrs. Wise were with the jury; and whether Haneke had any property in it at the time the money was received upon it was a question of fact for their determination.

The absolute indorsement of a promissory note does not relieve the indorser from liability upon it. He still has an interest in it to see that any agent of his authorized to collect and pay it over performs his duty. And if after his indorsement the indorsee gives him the possession and control of the note to collect the interest upon it for his benefit, or to otherwise control it, that would be sufficient to sustain an averment of an ownership in an information for embezzlement. Any legally recognizable interest in property is sufficient for that purpose.

Taken as an entirety, the charge of the court to the jury laid down the law fully and fairly and favorably for the defendant. The third and ninth of the instructions asked by the defendant were not given, but the points presented in them were covered by one, two, and four of the instructions asked by defendant, and which were given at his request.

The second, seventh, and eighth of the instructions asked by the people and given were taken substantially from sections 8506 and 956 of the Penal Code. As abtract propositions of law they were admitted to be correct; but it is contended they were inapplicable to the case, and tended to mislead the jury in considering their verdict.

The offense charged was embezzlement, which, as defined by the Penal Code, is "the fraudulent appropriation of property by a person to whom it has been intrusted." (Pen. Code, sec. 503.) An essential element in the offense is therefore a fraudulent intent. (Id., secs. 504–508.) And as instruction 2 related to what constituted embezzlement, and instruction 8 to the question of fraudulent intent in embezzlement, and both in substance contained the provisions of sections 506 and 508 of the Penal Code, it was proper for the court to give them to the jury as matter of law for their information. (Id., sec. 1127.)

The seventh instruction, copied from section 956 of the Penal Code, was not applicable, because there was no erroneous allegation as to the person injured. The information charged the embezzlement of the personal property of Carl Haneke. As to the offense itself, the name of the party injured, or the description of the property, there was no defective allegation. It was not necessary to specify in the information or prove at the trial the coin, number, or kind of money embezzled. (Pen. Code, secs. 956, 1131.) And as the allegations of the information were sufficient in respect to these things, there was no prejudicial error in reading as an abstract propo-

sition the section of the Penal Code contained in the objectionable instruction. It did not affect any substantial right of the defendant. (Id., sec. 1248, 1504.)

The following instruction is also challenged: "A witness false in one part of his testimony is to be distrusted in other parts." This is substantially the language of subdivision 3, section 2061, Code of Civil Procedure, and is correct. But it is said to be erroneous because the word "willfully" was not inserted immediately before the word "false" in the instruction. The defendant did not ask for a modification in that regard. But the omission of the word did not affect the correctness of the proposition.

In *People* v. *Sprague*, 53 Cal. 491, a like instruction was asked by the defendant in a criminal action. The trial court did not give the instruction as asked, but of its own motion inserted the word "willfully" immediately before the word "false," and with that correction gave the instruction to the jury against the defendant's objection and exception, and on appeal it was held that the insertion of the word "willfully" in the instruction did not change the effect of the instruction as offered. The instruction as given was therefore virtually the instruction offered. Upon the authority of that case, *People* v. *Hicks*, 53 Cal. 354, and *People* v. *Soto*, 59 Cal. 367, were also decided.

It is also objected that the court, against the objection and exception of defendant, refused to stop the attorney for the people from reading, in the course of his argument to the jury, extracts from "books of law and reports of judicial decisions on matters of law."

In *People* v. *Anderson*, 44 Cal. 65, the practice of reading from law-books in an argument to a jury was considered as improper; but it was held not to be a reversible error, because it was a matter within the discretion of the trial court, and unreviewable by this court, except for an apparent abuse of discretion. The record shows that the act was permitted by the court as illustrative of

the argument made to the jury, and that the court in its charge to the jury instructed them upon the subject as follows:—

"You are the exclusive judges of the testimony, and also the credibility of the evidence, and it is the duty of the court to instruct you as to the law of the case, upon which you must act in arriving at your verdict in this case.

"There has been a great deal of law read to you by most of the attorneys in the case, but it is your duty to decide the case according to the law as it is given to you by the court, regardless of any law which has been read to you from the books by any of the counsel in the case."

There was no prejudicial error in admitting in evidence, for the purpose for which it was offered, the letter to Quinn written for Haneke and his daughter by their attorney in San Francisco. Nor was there any abuse of discretion in postponing the trial at the request of the people, to procure the attendance of witnesses.

We find no reversible error in the record.

Judgment and order affirmed.

Morrison, C. J., Ross, J., Myrick, J., and Thornton, J., concurred.

Rehearing denied.