# PEOPLE v. DENOMME.

## Cr. No. 425; January 30, 1899.

### 56 Pac. 98.

**Manslaughter.—Deceased, Who was Drunk, Approached Accused,** a stranger, in a saloon, making an insulting remark, which the latter took to be addressed to himself, and, after pushing deceased away, on his second approach struck him with his fist—once in the face, and several times over the heart. Deceased was unarmed, but ac-cused testified he had his right hand closed, and accused struck him to protect himself, though there was no showing that deceased's man-ner was menacing, nor that accused's violence was justifiable. Deceased died in two hours of heart rupture, which the evidence showed the blows were sufficient to cause. Held, that the killing was man-

slaughter, under Penal Code, section 192, making killing as the result of an unlawful act, committed without due caution and circumspection, such offense.[1]

♦     **Manslaughter.—The Use of the Instructions in the Argument to the jury is within the discretion of the court.**

APPEAL from Superior Court, Fresno County.

Jeremiah Denomme was convicted of manslaughter, and he appeals. Affirmed.

W. D. Crichton for appellant; Attorney General Fitzgerald for the people.

CHIPMAN, C.—Defendant, Jeremiah Denomme, was charged by information with the crime of murder, alleged to have been committed upon one C. B. Molbeck, at the county of Fresno. Upon his plea of not guilty a trial was had and a verdict of guilty of manslaughter returned, upon which he was adjudged to punishment for five years in the state prison. This appeal is from the judgment, and from an order denying defendant's motion for a new trial.

1. Appellant claims that the evidence does not justify the verdict. The homicide occurred in a saloon. Deceased was quite drunk, although able to walk. Shortly before the assault he had been drinking at the bar with two other men, when some trouble arose, and the bartender knocked one of the party down. Defendant was not one of those three, but was in the saloon at the time. Just after this occurred, deceased started to go toward the rear of the saloon, and on his way passed near defendant, who was standing near a safe, talking with another person. A witness, who was sitting at a card table at the time, facing the bar and the parties, saw deceased as he approached defendant, and testified to what deceased said, as follows: " 'It is a—' I couldn't tell whether he said, 'You are a son-of-a-bitch,' or whether he said, 'It is a son-of-a-bitch of a shame for to hit a man like that.' Something like that. I know the 'shame' was brought in. I don't know whether he called this man [defendant] a son-of-a-bitch,

---

[1] Cited and followed in People v. Mullen, 7 Cal. App. 549, 94 Pac. 868, in which case the facts were held to justify a verdict of involuntary manslaughter, when the killing was produced by the defendant's fist while the victim was interfering with the brutal kicking of another man, whom the defendant had knocked down.

or whether he said it to himself. That was the first time he went over there. This defendant reached up his hand, and he pushed him to one side. He says: 'Go on. I don't want to have no trouble.' Molbeck [deceased] got a couple of steps back, and he walked up toward the man again; and, with this, defendant grabbed him by the neck and hit him. Molbeck was good and drunk. Then defendant come up and hit him like this, hard [illustrating over the heart], and Molbeck started back; put his hands up this way over his face. Then the defendant kept hitting him, hitting him like that [illustrating over the heart], I should say about four or five times.'' Other persons witnessed the assault at different stages. Deceased had no weapon in either hand, and did not strike defendant at any time. One witness asked defendant why he struck deceased, who replied that he stepped on his toes and called him a son-of-a-bitch. Defendant testified that deceased came up to him, and asked the way to the water-closet, and, being told, deceased replied, ''You bastard son-of-a-bitch! I know where the water-closet is as well as you do,'' whereupon defendant pushed him away. He testified: ''He came back—he had this hand shut and this open—toward me, and when I see he was near to me I strike him. I strike him in the face. . . . . I struck him twice on the body. . . . . I was afraid he might hurt me bad or get something.'' At another place he testified: ''I didn't see anything in his hands. He had his left hand open.'' He also testified that he struck the deceased to protect himself. He was asked if he noticed the condition of deceased, and answered: ''Well, I thought the man might have a little liquor in him, but not right drunk, seemed to me. I didn't pay much attention to the man, never having seen him before.'' Defendant did not testify that the manner of deceased was menacing or threatening, nor did it appear from any of the evidence that defendant was in the slightest degree justified by any conduct of deceased in making so violent an assault under the reasonable belief that his own life or limb was in danger. The reason for the assault given by defendant furnished no justification. The deceased was placed in a chair shortly after the assault, and died in about two hours at the saloon. The autopsy disclosed rupture of the heart, from which death ensued, and the evidence was that blows such as deceased received at the hands of defendant were sufficient

to have caused death from rupture of the heart. There was no evidence of defendant having any ill-will toward the deceased, or even any previous acquaintance with him, and defendant no doubt spoke the truth when he testified that he had no intention of killing deceased when he struck him, and the circumstances rebut the imputation of malice toward the defendant. But the killing was the result of an unlawful act committed without due caution and circumspection, and, although involuntary, it was manslaughter: Pen. Code, sec. 192.

2. Appellant assigns error in not allowing defendant's attorney, Mr. Crichton, to argue the law to the jury. The facts are brought to our attention by affidavits and counter-affidavits. It appears that the court, on its own motion, interrupted counsel, when about to read an instruction which counsel supposed had been previously settled by the court. It does not seem necessary to state fully the facts set forth in these affidavits. There is nothing in them to distinguish the case from other cases which have arisen and have been decided by this court. In some of the superior courts of the state the practice is to settle the instructions, as far as possible, before argument to the jury, and to allow counsel unrestricted use of these instructions in arguing the case. This practice is by no means universal, however, and is not at all obligatory. It is discretionary with the court whether counsel shall be permitted to use the instructions before the jury: Boreham v. Byrne, 83 Cal. 23, 23 Pac. 212. In People v. Carty, 77 Cal. 213, 19 Pac. 490, it was held that the court properly refused to permit counsel to argue the law to the jury in his opening address. The orderly procédure in criminal trials is laid down in title 7, Penal Code. It is the duty of the district attorney and the counsel for the accused to place the evidence before the jury, and at its conclusion they may or may not, as they wish, "argue the case to the court and jury." "The judge may then charge the jury, and must do so on any points pertinent to the issue if requested by either party; and he may state the testimony and declare the law": Pen. Code, sec. 1093. Except on a trial for libel, "questions of law are to be decided by the court, questions of fact by the jury; and although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, neverthe-

less, to receive as law what is laid down by the court": Pen. Code, sec. 1126. "In charging the jury the court must state to them all matters of law necessary for their information": Pen. Code, sec. 1127. There can be no doubt that the theory of the procedure is that the law which is to govern the jury must come from the court alone. And while it has been held here to be objectionable, either in civil or criminal actions, to read law to the jury (People v. Anderson, 44 Cal. 65), it has been also held not to be reversible error to permit it to be done, as the matter is wholly within the discretion of the court (People v. Treadwell, 69 Cal. 226, 10 Pac. 502). In Sullivan v. Royer, 72 Cal. 248, 1 Am. St. Rep. 51, 13 Pac. 655, it was held not error to refuse to allow defendant's counsel to read law books, or make an argument on the law of the case, or to state what he claimed to be the law, to the jury. In People v. Wheeler, 60 Cal. 581, 44 Am. Rep. 70, it was held error to allow the district attorney to read from "Browne's Medical Jurisprudence of Insanity," against the objection of defendant. It will thus be seen that the contention of defendant cannot be sustained. In the argument to the jury there are certain universally accepted principles of law which naturally and almost necessarily find their way into an argument upon the facts, and the fairness and intelligent discrimination of the court may be relied upon to hold counsel under just and proper restraint in the illustration of facts by calling attention to pertinent principles of law. But, as we have seen, the decisions leave with the court the discretion to limit counsel to a discussion of the facts; and we think this discretion may be exercised by the court upon its own motion, as was done in the present case. The rights of defendant are fully conserved by the provisions of the statute: Pen. Code, secs. 1093, 1127. The judgment and order should be affirmed.

We concur: Britt, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.