[Crim. No. 883. First Appellate District, Division One.—February 25, 1920.]

## THE PEOPLE, Respondent, v. WILLIAM HANEY, Appellant.

[1] CRIMINAL LAW—EVIDENCE—ADMISSION OF CONFESSION—PRELIMINARY PROOF.—Before any confession of a defendant can be offered in evidence it must be shown by the prosecution that it was voluntary, and made without any previous inducement, or by reason of any intimidation or threat. This is a preliminary question upon the admissibility of the testimony addressed to the court, and to be determined by it, and not by the jury.

[2] ID.—CROSS-EXAMINATION ON PRELIMINARY PROOF.—Upon such preliminary inquiry the court should permit cross-examination of the witness for the purpose of showing the particular circumstances under which the confession was made before permitting the confession itself to be given in evidence; but a refusal to permit such cross-examination will not justify a reversal of the judgment when it appears from the record that the defendant was not prejudiced thereby.

[3] ID.—LACK OF PREJUDICE.—If the cross-examination of the witness after the confession has been given in evidence fails to show that it was not given voluntarily, or fails to impeach his previous testimony in that respect, it is evidence that the defendant was not prejudiced by being refused a prior cross-examination.

[4] ID.—CONFESSION TO POLICE OFFICERS — STATEMENTS OF POSSESSION OF EVIDENCE OF GUILT — VOLUNTARY CHARACTER NOT AFFECTED.—The fact that the confession of the defendant was made to police officers, who questioned him while he was under arrest, does not necessarily render the confession involuntary; neither does the fact that the police officers told him they had evidence of his guilt, which, they testified, they actually had, rob the confession of its voluntary character.

[5] ID.—ARGUMENT TO JURY — "THIRD DEGREE" METHODS — JUDICIAL OPINIONS.—On this trial for murder, in which the prosecution introduced in evidence an alleged confession by the defendant made while in custody, the court properly refused to permit counsel for defendant, during his address to the jury, to read excerpts from judicial opinions relating to the "third degree" methods of obtaining confessions.

---

1. Confession of defendant as admissible against self and co-defendant, notes, 4 Ann. Cas. 918; 18 Ann. Cas. 274.

Reasons for exclusion of confessions, notes, 18 L. R. A. (N. S.) 772; 50 L. R. A. (N. S.) 1077.

[6] ID.—INTENTION OF DEFENDANT—ERRONEOUS INSTRUCTION—CORRECTION BY SUBSEQUENT STATEMENT.—In a prosecution for murder, the impression that the court believed the evidence showed that defendant and his associate had the intention of committing the crime of robbery which might be gained from the use by the court, in instructing the jury, of the phrase "as the evidence goes to show" immediately following the phrase "if you find at this time, with the intention of committing this robbery," is corrected by a statement immediately following: "if it does show that—if you find such to be the fact."

[7] ID.—WHO STRUCK BLOW—COMMON DESIGN—PROPER INSTRUCTION. On a trial for murder, the jury is properly instructed that it makes no difference whether the defendant or his associate struck the blow, if they find there was one struck, if they believe the claim made by the people that there was a common design on the part of the two persons.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph J. Bullock for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

WASTE, P. J.—Defendant was charged with the murder of Albert Reidinger. He was tried, convicted of murder in the first degree, with the punishment fixed at life imprisonment. This appeal is from said judgment of conviction and the order denying defendant's motion for a new trial.

On the 29th of May, 1919, the defendant approached George Baldwin, and offered to sell him a Ford automobile, which, he said, "was coming up from Los Angeles." Baldwin desired to purchase such a machine. The defendant and a young man by the name of Red Christiansen spent the rest of the day in the Mission district and downtown section of San Francisco looking for a Ford automobile. At the ferry building they found Reidinger driving the car they wanted. They engaged him to take them to Daly City. When near Coppa's corner, in that vicinity, the defendant struck Reidinger over the head with a piston from a riveting machine—a short iron bar about three-fourths of an inch

thick—fracturing his skull. They then drove to a lonely spot near by and laid the body in the bushes by the roadside, putting one of the cushions of the automobile under the head. Defendant and Christiansen then returned to San Francisco, leaving the automobile in front of Haney's home. The next morning he washed the blood out of the car, wiped off the dust, and delivered the automobile to Baldwin, who paid him for it. Reidinger died of his injuries some weeks later.

The actual commission of the crime by the defendant was established at the trial by the testimony of the police officers, who arrested the defendant some days after the commission of the crime, they narrating, while on the witness-stand, the details of a confession said to have been made to them by the defendant. A deputy sheriff of San Mateo County also told of a conversation he had with the defendant, in the county jail, shortly after he was taken there following his arrest and examination by the San Francisco police officers.

The defendant did not take the stand or produce any witnesses on his own behalf. No question is raised by the appellant as to the sufficiency of the evidence to support the verdict. The main points made on the appeal may be summed up under one heading, to wit, the validity of the trial court's ruling with respect to the admission in evidence of the confession, made by the defendant to the police officers after his arrest. Two questions present themselves:

1. Did the trial court unduly limit the defendant in his cross-examination of the officers prior to the admission of the confession?

2. Was the confession free and voluntary?

The crime with which the defendant was charged was committed on the thirtieth day of May, 1919. He was arrested at his home at about 1 o'clock on the morning of June 13th, following, and then taken to the Hall of Justice in the city of San Francisco. Before he was placed in jail three police officers, Dullea, Lindecker, and Hughes, engaged him in conversation. It was then 2:30 o'clock in the morning; the defendant and the police officers were alone in the room. At that time the defendant merely told the officers that he purchased the automobile from parties by the name of Harris for the sum of one hundred dollars and sold it to Baldwin. On the morning of June 20th, the defendant was again questioned by Officers Dullea and Lindecker, and

by Sergeant McQuaid. During this conversation, which lasted from 9:30 o'clock until 11 o'clock, the defendant narrated all the details of the crime, making a complete confession of his part in its commission. As he proceeded, the sergeant wrote the confession in his note-book, and read it to the defendant when he had finished. Haney then signed his name to the following indorsement on the sergeant's notes: "This statement is made free and voluntarily without any promise of reward, or any threats, and in the presence of Charles W. Dullea, Phil. Lindecker, Arthur McQuaid, at room 14 of the Hall of Justice, from 9:30 A. M. to 11 A. M., June 20, 1919."

When the case came on for trial and the *corpus delicti* had been proved, the prosecution called Officers Dullea and Lindecker and Sergeant McQuaid as witnesses to the details of the two conversations. The first of these, Dullea, was asked concerning the interview with the defendant on the morning of his arrest. Before Dullea was allowed to answer, counsel demanded the right, and the court permitted him to cross-examine him as to the voluntary character of the conversation. Counsel had not proceeded far, however, when the court directed the district attorney to proceed. This he did, over the objection of the defendant's counsel, and obtained the witness' version of the defendant's statement at that time. Officers Dullea and Lindecker and Sergeant McQuaid were each, in turn, examined as to the confession obtained from the defendant on the morning of June 20th. Upon their being asked to give the statement, the counsel for the defendant, in each instance, requested permission to cross-examine the witnesses as to the conditions under which the statement was made, and as to the free and voluntary nature of the conversation. The court very peremptorily denied the request and, as before, directed the district attorney to proceed.

It is urged by the appellant that the trial court was arbitrary in his rulings in this regard. We agree that this statement is correct. [1] Before any confession of a defendant can be offered in evidence it must be shown by the prosecution that it was voluntary, and made without any previous inducement, or by reason of any intimidation or threat. This is a preliminary question upon the admissibility of the testimony addressed to the court, and to be

determined by it, and not by the jury. [2] Upon such
preliminary inquiry the court should permit a cross-examina-
tion of the witness for the purpose of showing the particular
circumstances under which the confession was made before
permitting the confession itself to be given in evidence.
(*People* v. *Miller*, 135 Cal. 69, 71, [67 Pac. 12] ; *People* v.
*Loper*, 159 Cal. 6, 17, [Ann. Cas. 1912B, 1193, 112 Pac. 720].)
Unless that is done the trial court is not in a position to
rule understandingly on the question of the admission of
the confession. Great injury may be done to a defendant
by the admission in evidence of a confession which further
examination may disclose does not possess the necessary
element of being free and voluntary. The only safe and,
we may add, the only fair method to pursue in such cases
is to allow a sufficient cross-examination to determine that
question before the jury is permitted to hear the evidence
tending to establish the confession.

A refusal to permit such cross-examination will not, how-
ever, justify a reversal of the judgment, when it appears
from the record that the defendant was not prejudiced
thereby. [3] If the cross-examination of the witness after
the confession has been given in evidence fails to show that
it was not given voluntarily, or fails to impeach his previous
testimony in that respect, it is evident that the defendant was
not prejudiced by being refused a prior cross-examination.
(*People* v. *Miller, supra.*) The claim of appellant that the
court unduly limited the cross-examination of the witnesses
after the confession was given in evidence, is not borne out
by the record. His counsel examined the police officers
minutely and at length as to the circumstances under which
the confession was made. It only remains to carefully con-
sider the contention that the result of such cross-examination
was to show that the confession was not free and voluntary.

We are satisfied that the first conversation had by the
defendant with the police officers immediately following his
arrest was only an untruthful statement, made in attempted
explanation of his possession of the automobile sold to
Baldwin. It did not amount to a confession at all, and
need not be measured by the same rules governing our con-
sideration of the circumstances surrounding the confession of
June 20th.

The defendant had then been in jail for seven days. The cross-examination of the witnesses disclosed, in substance, the following facts: When he was brought into the consultation-room, Sergeant McQuaid, who did most of the questioning, asked him if he desired to make a statement. One or the other of the officers told him that he did not have to talk unless he wanted to; that they had information about the case and knew he was guilty. He was told who "was with him on the job and how the job was done; that the truth would not hurt him and he better come out with it and tell it." He was further told by McQuaid that "if he told the truth, all right, and if he told anything else that I would write it down just what he told me"; furthermore that they expected him to tell the truth. The defendant then stated, according to the testimony, "I might as well go ahead and tell you then. I did not want to bring Christiansen into it. I was going to save it until I got in court and tell it myself anyway." His complete confession followed.

It nowhere appears that the defendant was either frightened or unwilling to answer all questions put to him. No promises appear to have been held out to the defendant to induce him to make his statement. No coercion was used and the police officers emphatically denied the presence of any so-called "third degree" practices in securing the confession. All the officers testified that the defendant talked freely and voluntarily and that no threats, or offers of reward were made. All the evidence indicates that the confession was freely and voluntarily made. A very searching cross-examination failed to confirm appellant's contention that such was not the case. [4] The fact that the confession of the defendant was made to police officers, who questioned him while he was under arrest, does not necessarily render the confession involuntary. Neither does the fact that the police officers told him they had evidence of his guilt, which, they testified, they actually had, rob the confession of its voluntary character. (*People* v. *Siemsen,* 153 Cal. 387, 395, [95 Pac. 863]. See, also, *People* v. *Walker,* 140 Cal. 153, 156, [73 Pac. 831]; *People* v. *Warren,* 12 Cal. App. 730, 731, [108 Pac. 725]; 16 Corpus Juris, p. 728, sec. 1494.)

The admonition of the officers to the defendant that "the truth would not hurt him, and he better come out and tell

it; that they expected him to tell the truth" should not, in our opinion, under all the circumstances of this case so strongly establishing a free and voluntary statement, be construed as an inducement to a confession of guilt. (*People* v. *Heivner*, 13 Cal. App. 768, [114 Pac. 411]; *People* v. *Luis*, 158 Cal. 185, 190, [110 Pac. 580]; *State* v. *Grover*, 96 Me. 363, [52 Atl. 757]; 16 Corpus Juris, p. 721, sec. 1476.) There is nothing in the instant case to indicate in the slightest degree that this admonition was in any way coupled with a threat, or was to be, or was, regarded as a promise. It held out no inducement of any kind.

We are fully satisfied, on the whole record, that the confession of the defendant, obtained by the San Francisco police officers, was freely and voluntarily given. The lower court, therefore, properly refused to strike it out, on the motion of defendant, following the cross-examination.

Subsequently to his arrest and examination by the San Francisco police, defendant was transferred to the San Mateo County jail. The morning after his arrival there he had a conversation with Deputy Sheriff McGovern, in which he admitted striking the blow which killed Reidinger. When McGovern was called to the stand the district attorney made no effort to show that the confession was free and voluntary before asking for the conversation. Defendant's counsel objected to the questions upon the ground that the requisite free and voluntary character of the statement had not been shown. The court merely directed the witness to proceed. This was error, as we have already pointed out. However, on cross-examination of the witness, defendant's counsel developed the circumstances under which the conversation between the deputy sheriff and the defendant was had. While the proof was not along the usual lines of such questioning, it clearly established the free and voluntary character of the confession, and justified the action of the trial court in refusing to strike out the testimony on defendant's motion. The error just noted was, therefore, one without prejudice.

[5] During his address to the jury defendant's counsel sought to read from a volume of the California Reports, as a part of his argument, a public utterance made by Mr. Justice Sloss, when a member of the supreme court, relating to the "third-degree" methods of obtaining con-

fessions, and which statement Mr. Justice Melvin subsequently embodied in the decision in *People* v. *Loper,* 159 Cal. 18, [Ann. Cas. 1912B, 1193, 112 Pac. 720]. He was not permitted by the court to do so. Neither was he permitted, in the same connection, to read an excerpt from an opinion by Chief Justice White of the supreme court of the United States, upon the same subject. The court's action in this regard was eminently proper. (*People* v. *Anderson,* 44 Cal. 65; *People* v. *Treadwell,* 69 Cal. 226, [10 Pac. 502]; *People* v. *Forsythe,* 65 Cal. 101, [3 Pac. 402].)

[6] One of the instructions given by the trial court reads as follows: "If you find from this evidence, members of the jury which has been presented here before you that this defendant was at the place claimed by the people and at the time claimed and was there with the intent to commit robbery as I have defined it to you from the Penal Code and you find that he had an associate by the name of Christiansen and if you find at this time, with the intention of committing this robbery, *as the evidence goes to show,* if it does show that—if you find such to be the fact— that a blow was struck either by the defendant or by his associate Christiansen and from the result of that blow that the deceased died, then members of the jury I instruct you that it makes no difference as to which one of these parties struck that blow, either the defendant or the person they claim to be named as Christiansen, both being there engaged in this matter, in the committing of this alleged robbery, if you so find from the evidence, one is as guilty as the other. It makes no difference which one struck the blow, if you find there was one struck, if you believe the claim made by the people that there was a common design on the part of these two persons, this defendant and this man Christiansen."

Appellant claims that by the italicized phrase the court told the jury that "the evidence went to show" that the defendant and Christiansen had the intention of committing the crime of robbery. We think, however, that the court's prompt effort to correct the impression, which the objectionable phrase, standing alone, might reasonably carry with it, was fairly accomplished by the statement immediately following: "if it does show that—if you find such

to be the fact,'' and by the remainder of the instruction. [7] We find nothing objectionable in the concluding sentence of the instruction.

The order and judgment are affirmed.

Richards, J., and Gosbey, J., *pro tem.*, concurred.