[Crim. No. 2128.   Second Appellate District, Division Two.—November 5, 1931.]

THE PEOPLE, Respondent, v. JACQUES SAMENIEGO et al., Appellants.

W. E. Lady for Appellants.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, and John Barnes, Deputy District Attorney, for Respondent.

FRICKE, J., *pro tem.*—Appellants were convicted of murder of the first degree, with the penalty of life imprisonment, and appeal from the order denying their motion for a new trial and from the judgment.

On October 23, 1928, at about midnight the deceased, Ralph Trump, stopped his automobile across the street from the residence of Miss Marjorie Ullman, who was riding beside him in the front seat of the vehicle. They had conversed for a few minutes when two young men approached on foot from the direction in which the car was faced. One of these men ran to the right front fender and stood there. The other paused a moment in front of the automobile with a pistol in his hand and then ran around to the driver's seat and, without a word being spoken and without any motion on the part of the occupants of the car, shot the deceased through the heart, causing almost immediate death. The defendants were arrested August 2, 1930, in connection with the investigation of a series of robberies and, in the course of the questioning, appellant Sameniego stated that Mossberg had killed a man two years prior. This led the officers to a further inquiry, which disclosed that the killing was the one upon which this prosecution is based. Sameniego then went to the scene of the murder with the officers and there gave a more detailed statement and explanation of the circumstances. In his confessions Sameniego stated in substance that he and Mossberg had agreed to "hold up" a "petting party", that they drove past the automobile occupied by the deceased and his companion, parked the car in which they were riding, and walked back to rob the occupants of the vehicle they had just passed; that he, Sameniego, went to the right side of the automobile and Mossberg went to the driver's side, armed with a pistol and, without a word being spoken, and without any action on the part of the occupants of the automobile, Mossberg shot the deceased and that appellants then ran away. Mossberg in his first confession told a similar story, but stated that Sameniego fired the shot. The next day both defendants made statements which were taken down in shorthand, going into detail, but substantially the same as the original statement of Sameniego, Mossberg admitting that he fired the fatal shot.

Appellant Sameniego contends that the court erred in the admission of his confession in evidence.

■ (1) The contention that the existence of a preconceived plan or conspiracy on the part of defendants to commit a robbery must be proved as a part of the *corpus delicti* is without merit. The *corpus delicti* of a felonious homicide consists of the death of a human being and a criminal agency. Nowhere will there be found in our law the additional element contended for by appellant. ■ Neither is the identity of the perpetrator of a crime an element of the *corpus delicti*. (*People* v. *Flores,* 34 Cal. App. 393 [167 Pac. 413]; *People* v. *Vertrees,* 169 Cal. 404 [146 Pac. 890]; *People* v. *Rodway,* 77 Cal. App. 738, 783 [247 Pac. 532]; *People* v. *Moe,* 116 Cal. App. 740 [3 Pac. (2d) 354].)

■ Appellant Sameniego contends that his confession was involuntary because, in his first conversation with the police, appellant asked whether a charge would be filed against him if he told what he knew and the officer replied that a charge would be filed against appellant if he was implicated but would not be filed if he was not implicated. To this appellant replied that he was not implicated, and then stated that Mossberg had committed a murder, but that he, Sameniego, had nothing to do with it. In the statement made the following day and taken down in shorthand, Sameniego disclosed that his previous statement had not been true in all respects, made certain corrections and added, "I thought it over last night and thought I might as well tell the truth," a declaration rather clearly indicating that his final statement was the truthful one and was prompted by his voluntary decision to tell the truth. The situation is similar to that in the case of *People* v. *Haney,* 46 Cal. App. 317, 322 [189 Pac. 338, 340], wherein, preceding the confession, a police officer had told the defendant that "the truth would not hurt him and he *better* come out with it", language generally held to imply a promise. There, in view of the fact that the defendant preceded his confession by the statement that he had intended to save his statement and tell it in court, but that he might as well go ahead and tell it then, the confession was held free and voluntary.

There is nothing in the language used by the officer in the case at bar which can be interpreted as even suggesting that a benefit might be gained by talking. Appellant was dis-

tinctly told that if he was implicated a charge would be filed against him. Furthermore, appellant in his testimony at the trial made no claim that the statement of the officer had any influence upon him whatever; in fact, he denied all recollection of the conversation. (2) No single word, phrase or sentence addressed by an officer to a prisoner can of itself determine whether an ensuing confession is free and voluntary. All of the facts and circumstances preceding the confession must be taken into consideration and when the entire proof shows that the confession was made freely and voluntarily the confession becomes admissible even though some isolated expression of the officer, removed from the context might indicate that some inducement was held out to the prisoner. The trial court was fully warranted in holding that the confession was free and ·voluntary.

Appellants contend that there is no proof other than that contained in the confessions which will sustain the verdict of first degree murder. There can be no doubt that the testimony is amply sufficient to show that murder was committed. The concrete question here is, do the circumstances as shown by the testimony of Miss Ullman prove a murder of the first degree? "In *People* v. *Denman,* 179 Cal. 497 [177 Pac. 461], this court said, 'We regard it as settled law in this jurisdiction that one who kills another in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem is guilty of murder of the first degree by force of the provisions of section 189 of the Penal Code, altogether regardless of any question whether the killing was accidental or unintentional.' " (*People* v. *Boss,* 210 Cal. 245 [290 Pac. 881, 882].) Do the circumstances of the case at bar show an attempt to commit robbery? Appellants were armed, together they approached two people seated in an automobile at midnight, one went to one side and the other went to the other side of the car with a drawn revolver which he pointed at the driver's heart and fired the fatal shot. (3) Clearly the appellants were engaged in an overt act constituting an attempt and their entire conduct and all of the circumstances show that their purpose was robbery. The pointing of the weapon at the deceased was a demand by action which is as characteristic of an attempt to rob as the command of the gay nineties, "Your money or your life" or the more modern formula "Stick 'em up." Much less than this has

been held to constitute an attempt to commit robbery. (See *People* v. *Moran,* 18 Cal. App. 209 [122 Pac. 969], wherein two men provided themselves with pistols and masks. One of them pushed open the swinging doors of a saloon, and seeing a crowd of men therein, withdrew and, shortly after joining his companion, and without any further overt act, both were arrested.) ▇ (4) The circumstances of the shooting, the total absence of provocation, justification, mitigation or excuse for the shooting are in themselves sufficient proof *prima facie* that the killing was wilful, deliberate and premeditated, and that the murder was of the first and not the second degree. ▇ (5) It is well settled that proof of the *corpus delicti* beyond a reasonable doubt is not a prerequisite to the reception in evidence of a confession, *prima facie* proof being sufficient. (*People* v. *Fong Wot,* 63 Cal. App. 677 [219 Pac. 481], *People* v. *Selby,* 198 Cal. 426 [245 Pac. 426].)

▇ Appellant Sameniego contends that independent of the confession there is no evidence to support the verdict of first degree murder as to Sameniego. While the proof shows that the fatal shot was fired by Mossberg it also shows that Sameniego when first seen was in the company of Mossberg, that they both approached the automobile and there separated, one going to the side of the car occupied by the woman and the other to the driver's side, and that they left together after the shot was fired. As elsewhere indicated in this opinion, this was sufficient proof, at least *prima facie,* of an attempt to commit robbery and that at the time of approaching the automobile the two men were engaged in the common design of committing a robbery. The circumstances warrant the inference that such common design was the result of previous agreement and that a conspiracy to commit robbery existed. (See *People* v. *Matthew,* 68 Cal. 95 [228 Pac. 417].) That the existence of a conspiracy may be proved wholly by circumstantial evidence is too well settled to require citation of authority.

▇ Appellant Mossberg raises the point that the trial court erred in not instructing the jury as to the law of murder in the second degree and that the jury might return a verdict of guilty of the lesser degree. As previously stated herein, the evidence, exclusive of the confessions, clearly shows that the homicide was a murder of the first

degree, a conclusion which is irresistible when the evidence of the confessions is also taken into consideration. No evidence in mitigation, justification or excuse was offered by either of the defendants, their efforts resting entirely with an absolute denial of the killing and an attempt to establish an alibi. (6) The defendants were either guilty of first degree murder or not guilty and it is conclusively settled by a long line of authority that, in such a case, it is not error for the trial court to refuse to instruct the jury as to a lesser degree of the crime or a lesser included offense. (*People* v. *Northcott*, 209 Cal. 639, 653 [70 A. L. R. 806, 289 Pac. 634].)

Appellants assign as error the failure of the court to give certain requested instructions to the effect that words spoken and things done by a person while unconscious of what he was doing or saying cannot be considered against him in determining his guilt or innocence; that a person who commits an act without being conscious thereof is not criminally responsible therefor and that if the jury found the defendant was so under the influence of drugs that he was not conscious of what he was doing at the time the crime was committed the jury must acquit the defendant.

In presenting this point appellants' counsel has failed to comply with plain provisions of Rule VIII of this court, which requires that "The briefs must present each point separately, under an appropriate heading, showing the nature of the question to be presented" and that "If it be claimed that instructions requested were erroneously refused, the refused instructions must be printed in full in appellant's brief, and all instructions given, bearing upon the subjects covered by the refused instruction, must be printed in appellant's brief in full, or the substance thereof clearly stated, with citation to the line and page where such instructions may be found." In view of the serious nature of the offense of which appellants were convicted this court is unwilling to penalize them for the neglect of counsel by applying the penalty for violation of the rule and has therefore examined the record even though the manner of presenting the point indicates that appellant's counsel had no confidence in the merits of his contention.

Appellants in their testimony denied that either of them used narcotics, but said that they had used a drug named dial ciba, the effect of which was the "Same thing as

whiskey," Mossberg adding, "It goes further than that; it deadens one's conscience." ▮ (7) This testimony shows that the condition produced by this drug, if any was used, was that of intoxication and since the taking of this intoxicating drug was voluntary the law applicable to an act committed while under its influence is not subdivision five of section 26 of the Penal Code but section 22 of that code, which provides that no act is less criminal by reason of the perpetrator having been in a state of voluntary intoxication, but that evidence of intoxication may be considered by the jury in determining the purpose, motive or intent with which he committed the act. ▮ (8) Section 22 is not limited to intoxication resulting from the use of intoxicating liquor, but includes all forms of voluntary intoxication.

Even, on the theory that the drug in question could produce unconsciousness and that the case falls within the provisions of subdivision five of section 26 of the Penal Code declaring that among those incapable of committing crime are "Persons who committed the act charged without being conscious thereof," appellants' contention is untenable. ▮ (9) Where there is evidence of the existence of that state of the mind wherein the individual's conscious mind has ceased to operate and his actions are controlled by the subconscious or subjective mind it would be error to refuse instructions as to the legal effect of such unconsciousness. This leads to the query as to whether any such evidence exists in this case. As to the confessions the testimony of appellants at the trial was that they then could not remember what they had said to the officers during the two days following their arrest. They also testified that prior to the arrest they had each taken an intoxicating narcotic drug known as dial ciba. Their testimony shows no more than an inability at the trial in May, 1931, to remember conversations had in August, 1930. This inability to remember is not evidence that they were unconscious at the time of the confessions. The inability of a defendant or a witness to remember his former incriminatory or otherwise embarrassing declarations is of such common occurrence and so naturally accountable for upon the normal defects of memory, or, what is more likely, the intentional denial of recollection, as to raise not even a suspicion of the declarations having been made while in an unconscious condition. As to the date of

the crime, October 23, 1928, defendants testified that they did not commit the crime and they each further and in detail testified that at the time of the murder they were at places other than the scene or vicinity of the crime. Such testimony directly negatives any contention that they were unconscious at the time of the crime. ■ (10) The requested instructions were properly refused upon the ground that there was no evidence upon which they could be predicated.

The judgment and order appealed from are affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 20, 1931, and the following opinion rendered thereon:

FRICKE, J., *pro tem.*—The first two points in the petition present nothing not covered by the opinion filed herein and are merely a restatement of points previously argued.

Reference is made to the statement of defendant Mossberg in his confession that his only explanation of the killing was that he was "doped with dial ciba that I didn't know what I was doing", as indicating that the homicide was only murder of the second degree. Counsel has allowed his enthusiasm to stampede his logic, for the sworn testimony of the defendants and their witnesses was as to a detailed alibi, and to now urge the statement of Mossberg in his confession as true or worthy of credence is to argue that the defense of alibi was fabricated and supported by perjured testimony. ■ However, had the defendants desired to urge the defense of unconsciousness at the time of the crime they should have introduced evidence thereof at the trial. In the absence of evidence to support it the question was not in the case and hence did not require an instruction from the court.

The contention that independent of the evidence of the confession the record is devoid of evidence to support the verdict as to Sameniego is wholly without merit. The question as to whether a verdict is supported by the evidence is determined by an examination of *all* the evidence and not by an examination of the evidence after excluding the confession of the accused.

As a final point petitioner assigns error predicated upon the admission of evidence over objection. Petitioner also asserts that this was "in violation of a stipulation made between counsel and the court at the inception of the trial", but in the very same sentence petitioner states that "the trial court permitted the District Attorney to be relieved from the stipulation". The trial court was entirely within its rights in relieving the prosecutor from the stipulation when it became evident that testimony introduced by the defense subsequent to the stipulation was of such a character that it would have been inequitable to enforce it. (*Conwell* v. *Varain*, 20 Cal. App. 521 [130 Pac. 23]; *Moffitt* v. *Jordan*, 127 Cal. 628 [60 Pac. 175].) The stipulation was to the effect that testimony as to the declarations of the defendants should be limited to the subject of the murder charged and should not include declarations concerning certain other crimes committed by the defendants after the homicide. In presenting their defense, although no proof was offered of unconsciousness at the time of the crime, evidence was introduced by the defendants tending to show that at the time of making their confessions and statements to the police they were under the influence of an intoxicating narcotic drug. In view of this evidence the court relieved the prosecution from the stipulation and permitted the entire conversation, including the reference to the other crimes, to be given in rebuttal, as tending to show the state of mind of the defendants at the time of the conversations. Since the mental condition of the defendants would be reflected and evidenced by their acts, declarations and conduct, it was competent here, as in cases where insanity is urged, to permit evidence of the entire conversation for the limited purpose of showing the mental condition of the defendants. (See *People* v. *Harris*, 169 Cal. 53 [145 Pac. 520]; *People* v. *Vukich*, 201 Cal. 290 [257 Pac. 46].) In view of the fact that defendant Mossberg particularly made an effort to show his addiction to the drug in question during the period subsequent to the homicide and up to the time of his arrest, similar claims being made by appellant, and the further fact that the other crimes were referred to and described by the defendants in the confessions, evidence of the conduct of defendants on occasions during the interim were admissible to show what, if any, effect the drug had upon the defend-

ants, that the descriptions of their past conduct as given by them in their confessions were correct and accurate, and therefore as tending to show that, at the time of the confessions, the defendants were not unconscious as they contended. The fact that such evidence tended to show that the accused had committed other crimes than the murder for which they were on trial would not, of course, exclude evidence which was otherwise admissible. Furthermore, the court fully instructed the jury of the limited purpose for which the evidence was received and we must presume that the jury followed the court's instructions. Petitioner ties the last point in with the point that the confessions were inadmissible because the declarants were not conscious. The evidence supporting the view that the defendants were conscious and competent to make confessions is so overwhelming that there can be no question of the correctness of the court's ruling receiving the confessions in evidence. ▮ Even if there were credible evidence sustaining the conclusion that the defendants were under the influence of the intoxicating drug at the time, this would not have rendered their declarations inadmissible (*People* v. *Ramirez,* 56 Cal. 533, 535 [38 Am. Rep. 73]), but would go only to the weight of the evidence.

The petition is denied.

Thompson (Ira F.), J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 3, 1931.