[Crim. No. 1419.   Third Appellate District.—April 25, 1935.]

THE PEOPLE, Respondent, v. A. H. COWLING et al., Appellants.

468

Marc F. Morrison and Blaine McGowan for Appellants.

U. S. Webb, Attorney-General and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendants were jointly tried and convicted of robbery of the second degree. They have perfected separate appeals based upon the same record. It is contended the evidence fails to support the judgment of conviction, that the court erred in the admission of evidence in the course of the trial and that the district attorney was guilty of prejudicial misconduct in his argument to the jury.

The record shows without substantial conflict that the appellants met John Rodgers in Eureka and he proposed to them that they rob a country store at Pepperwood. To this suggestion the appellant Cowling said, ''Sure, I have the gun and ammunition in the car.'' The defendants and Rodgers immediately took Cowling's car and drove to Pepperwood, past the store which they planned to rob, to a point on the highway just south of that place. Here they stopped the car, and Rodgers, taking Cowling's pistol, got out, and entering the bushes near the roadside, changed his clothes so as to disguise himself. It was then about 5 o'clock in the afternoon. The appellants then drove south a few miles to Redcrest, which is an auto camp. Here they remained for

about half an hour, waiting for Rodgers to complete the job of holding up the proprietor of the store at Pepperwood, during which time they ate a light lunch. Having donned his suit of disguise, including a gray cap, Rodgers took Cowling's revolver and walked back to the store. He found the proprietor and one other man at the store. He entered on the pretense of buying some matches, and held them up at the point of his revolver, robbing the cash register of about $13. Telling his victims not to leave the store for ten minutes on penalty of receiving bodily harm, he stepped out upon the front porch, anxiously looking south for the return of the appellants with their automobile. After a few moments, when the car failed to return, Rodgers hastily went south until he reached the point where he had changed his clothes. He again changed his clothes, leaving the disguise uniform in the bushes. The car soon returned with the appellants. Cowling was driving the vehicle. Rodgers whistled for them and immediately got in, jingling the coin in his pocket, saying that he had robbed the store. He then told the appellants the details of how he had succeeded in robbing the store. He urged them to "get out of there in a hurry". They drove on past the store in Pepperwood where they were seen by the occupants thereof. Upon Rodgers' departure from the store, the proprietor promptly called over the telephone for an officer. The officer arrived shortly after the robbers passed on their way toward Eureka. He also picked up a traffic officer who chanced to be driving by and together they pursued and overtook the robbers. The officers stopped the defendants' car and arrested the three men, charging them with robbing the Pepperwood store. The car was searched and the revolver and cartridges were found under the front seat where Cowling sat driving the machine. The following day the officers took the appellants and Rodgers in a machine and drove down the highway to a place which was pointed out by one of them as the spot where Rodgers changed his clothes. Hidden in the bushes near by the officers found the bundle of clothes which had been discarded. Later, Rodgers pleaded guilty to the charge of robbery. Cowling wrote a letter to his wife, which fell into the hands of the officers, virtually admitting his guilt of the crime. Each of the appellants subsequently wrote out in his own handwriting a statement substantially conforming to the above recitation of facts, which statements

were later typed and signed by them. Each signed statement was prefaced with the declaration that it was made by the accused "of his own free will, there being no threats or promises of any kind made to him".

The defendants were jointly tried and convicted of robbery of the second degree. Motions for new trial were denied. They were accordingly sentenced to state prison. Separate appeals have been perfected.

The evidence abundantly establishes the fact that the appellants were both guilty of aiding and abetting Rodgers in the commission of robbery, and are therefore punishable as principals in that crime pursuant to the provisions of section 971 of the Penal Code. They acquiesced in the plan to rob the store. They furnished the automobile and accompanied Rodgers to and from the scene of the robbery. Cowling furnished the revolver with which the crime was accomplished. The fact that they cautiously remained away during the time that the store was actually robbed in no way minimizes their guilt. Under the circumstances of this case it may not be said they did not participate in the commission of the crime. They did participate in all the details of the crime except the actual stealing of the money in the store at the point of the revolver. The evidence is adequate to support the verdict and the judgments against both appellants.

The court did not err in admitting in evidence the signed statements of the defendants without first requiring a sufficient foundation to be established showing that they were voluntarily made. A careful examination of the record leaves no doubt these statements were freely and voluntarily made by the defendants without any threat of punishment or offer of reward on the part of anyone. The record is replete with positive statements of several officers that no threats, coercion or offers of reward were made. These statements of the officers were not contradicted by the defendants. Neither of them took the witness stand in his own behalf. The only statement upon which the appellants rely in support of this alleged error is that Constable Marshall, after a lengthy cross-examination, in reply to the question, "Do you remember saying to him, well, if you come clean, it will be better for you, or words to that effect?" said, "Well, probably words to that effect." This same witness had previously testified that these statements were

voluntarily made. To a similar question, as follows, "Now you recall saying to him . . . you are a young man, the best thing you can do is come clean on this," he replied, "No sir." Several officers told the exact circumstances under which the statements were made and signed. It leaves no doubt there was no coercion exercised or inducement offered which procured the documents to be signed. The court therefore did not err in receiving the statements in evidence. (*People* v. *O'Brien,* 53 Cal. App. 754 [200 Pac. 766]; *People* v. *Haney,* 46 Cal. App. 317 [189 Pac. 338].)

■ The question as to whether an admission or confession is made voluntarily is primarily for the determination of the trial court. Except for an abuse of discretion in that regard, the ruling of the court may not be disturbed on appeal. (*People* v. *Lehew,* 209 Cal. 336 [287 Pac. 337]; *People* v. *Luzovich,* 127 Cal. App. 465, 470 [16 Pac. (2d) 144].)

■ Nor did the court err in admitting the defendants' statements of their guilt prior to the establishment of the *corpus delicti.* In the absence of showing that the defendants were prejudiced on that account, the mere order in which the *corpus delicti* is proved is immaterial. (*People* v. *Wilkins,* 158 Cal. 530 [111 Pac. 612]; *People* v. *Hudson,* 139 Cal. App. 543 [34 Pac. (2d) 741]; 8 Cal. Jur. 234, sec. 303.) In the present case the *corpus delicti* was conclusively proved by two witnesses to the actual robbery, before the statements of the defendants were offered in evidence. Nothing then remained to show their guilt of the crime of robbery except to prove that they aided and assisted in the commission of the offense, although they were not actually present when the store was robbed. The *corpus delicti* was fully established independently of the defendants' statements. ■ The mere connection of the accused persons with the commission of the offense with which they are charged is not an essential part of the *corpus delicti.* Proof of the *corpus delicti* does not necessarily include the fact that the accused persons participated in the commission of the crime. (*People* v. *Ward,* 134 Cal. 301, 306 [66 Pac. 372].) It is usually sufficient for the purpose of establishing the *corpus delicti* to prove that the crime charged in the information was actually committed by means of some criminal agency. (*People* v. *Jones,* 123 Cal. 65 [55 Pac. 698]; *People* v. *Wagner,* 29 Cal. App. 363 [155 Pac. 649].)

■ A *prima facie* showing of the necessary elements constituting the *corpus delicti* is sufficient upon which to authorize subsequent evidence connecting the accused persons with the commission of the crime. (*People* v. *Bollinger,* 196 Cal. 191 [237 Pac. 25]; *People* v. *Hill,* 2 Cal. App. (2d) 141 [37 Pac. (2d) 849].) But proof of the *corpus delicti* must be first made independently of any extrajudicial statement of the accused persons. (*People* v. *Tapia,* 131 Cal. 647, 651 [63 Pac. 1001]; 8 Cal. Jur., p. 167, sec. 248.) It necessarily follows that, having established the *corpus delicti,* the burden is then placed on the prosecution to further prove the guilt of the defendants of the alleged crime, in the manner provided by law. In the present case the order of proof heretofore suggested was strictly followed, and both the *corpus delicti* and the proof of the defendants' guilt were satisfactorily established.

■ Under the circumstances of this case it was not prejudicial error which requires the reversal of the judgments that the court refused to charge the members of the jury that they must find the *corpus delicti* was adequately established by evidence independently of the extrajudicial admissions of the defendants, for the reason that the *corpus delicti* was conclusively proved without substantial conflict before the defendants' statements were offered in evidence. Assuming, without so deciding, that ultimately it is the province of the jury to determine whether an admission or confession of an accused person is made freely, without coercion or threats (*People* v. *Oliveria,* 127 Cal. 376 [59 Pac. 772]; *People* v. *Fowler,* 178 Cal. 657 [174 Pac. 892, 85 A. L. R. 883, note]), in the absence of a showing of prejudice thereby, it is not reversible error to refuse to instruct the jury that they must so find and that the *corpus delicti* has been satisfactorily established independently of such confession or admission, before the statements may be considered in determining the guilt of the accused persons. (Art. VI, sec. 4½, of the Constitution.) In this case, the defendants did offer instructions covering the points last mentioned, which might have been properly given to the jury. But since there is no reasonable question that the statements of the defendants were voluntarily made and that the *corpus delicti* was clearly established before they were offered in evidence, it was not prejudicial error to refuse to give the proposed

instructions to the jury, since it does not appear there was a miscarriage of justice in finding the defendants guilty of robbery of the second degree.

■ For the same reason last mentioned, we are of the opinion the challenged declarations of the district attorney in the course of his argument to the jury do not constitute prejudicial misconduct which requires a reversal of the judgments. Neither of the defendants took the witness stand in his own behalf at the trial of the case. In his argument to the jury, after summing up the undisputed facts and circumstances shown by the evidence, which leaves no reasonable doubt that the robbery was committed and that the defendants participated therein, the district attorney said, "What evidence has been offered by the defendants in defense of this case?" And again, after reviewing the testimony of witnesses establishing the commission of the crime beyond all doubt, he said, "What other witness was called?" Of course these statements do clearly infer that the defendants failed to take the stand in their own behalf. There was no objection to these statements at the trial, and the court was not asked to instruct the jury to disregard them. They were not then assigned as prejudicial. But since the commission of the offense of robbery and the defendants' participation therein are so conclusively established without conflict of evidence, we are of the opinion they do not constitute reversible error under the constitutional provision heretofore referred to.

■ Article I, section 13, of the Constitution was amended at the general election held November 6, 1934, authorizing the court or counsel to comment to the jury upon a defendant's failure to "explain or deny by his testimony any evidence of facts in the case against him". This amendment of the Constitution, having been proposed by initiative, did not become effective until "five days after the date of the official declaration of the vote by the Secretary of State" (art. IV, sec. 1, Const.), which, with regard to this amendment, occurred December 20, 1934. The trial of this case having occurred on November 7th and 8th of that same year, the amendment has no bearing on the determination of that question of alleged prejudicial error on the part of the district attorney in referring to the defendants' failure to take the witness stand in their own behalf.

For the reasons assigned, the judgments and the orders are affirmed.

Plummer, J., and Pullen, P. J., concurred.