[Crim. No. 6460.   Second Dist., Div. Three.   Aug. 28, 1959.]

THE PEOPLE, Respondent, v. WILLIAM RICHARD HAWK et al., Defendants; HARRY CALBERT SHIREY, Appellant.

William A. Drake, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendants Hawk and Shirey were accused in three counts of the crime of burglary. It was alleged that the burglaries were committed on or about February 20, 1958. Hawk pleaded guilty. In a trial by jury Shirey was found guilty on the three counts. Shirey appeals from the judgment and sentence.

Appellant contends that he was denied due process of law in that the court permitted "the introduction of a confession obtained as a result of (a) compulsion and duress, (b) promise of reward, immunity or lesser punishment."

There was ample evidence that between sundown of February 19, 1958, and sunrise of February 20, 1958, burglary was committed by breaking and entering (1) the Shrader service station, (2) the office of the Garvan Chemical Corporation, a corporation, and (3) the Flying Saucer Café. (Those places were in or near Compton.)

The owner of the café testified, among other things, that when he returned to the café at 5:20 a. m. on February 20 he found that a padlock had been broken off the door and the door was open; he looked through the window and saw a man who was crouched by the door—the man was holding a rifle; the witness told the man to come out, but the man did not answer; then the witness went to his house (about 100 feet from the rear of the café) and telephoned the sheriff; while he (witness) was outside the café and awaiting the arrival of the officers, the man who had been crouching inside the café came up to the witness; the man, who was then carrying a rifle, said that he had heard someone yell, and he had come over to see if he could help; the witness replied that he thought the telephone booth had been broken into; the man said that the café door was open, but it should not be open; the witness entered the café; the man went away; the officers arrived within approximately 10 minutes; about 30 minutes later the officers brought the man back to the café. (The man was defendant Hawk.)

Appellant was arrested on February 20, 1958, about 7 p. m., in Wilmington.

Officer Roth testified that he and Officer Vaughn had a conversation with appellant about 8 p. m. on February 20 at the sheriff's station; the conversation covered a period of approximately 45 minutes; the appellant's statements were made freely and voluntarily and no promise of reward or lesser sentence was made to him and no force was used upon him; the substance of the conversation was: ''We talked to Defendant Shirey and told him the information that we received from another person and showed him a statement that this other person had written out for us, and we talked several times and he denied knowledge of the claims. Later on he made admissions where he entered the service station in the company of this other individual, they broke the window, entered the station, picked up a .22 rifle, miscellaneous coin, and the screw driver. After leaving the location of the service station, they went to a chemical plant where the other person broke the window and entered the plant and Defendant Shirey stood outside with a gun in his hand. After leaving the chemical plant, they went to the Flying Saucer Café, the other person broke the lock, they both intended to enter the building, but Defendant Shirey observed a man coming from the back house and ran away and that was it, apparently, other than that Defendant Shirey stated that he had cut his hand when they went into the service station and showed me slight cut on one of his fingers.''

Officer Roth testified further that after said conversation he asked appellant if he would write a statement; that appellant made a written statement (in his handwriting) as follows: ''Bill Hawk and I entered a service station at the corner of Avalon and Olive, northwest corner. We took a .22 riffle, we left there and went to another building. Bill went into this building and picked up some little boxes of tools. We took this loot and put it in Bill's car, a '48 Cadillac. Bill went into the building where he got the boxes and I was outside with the gun. We tried to fix a flat on Bill's car, but didn't fix them. And then went to the Flying Saucer. Bill broke lock and entered the building with .22 riffle. I started to go in, but I saw a man come around the corner and I ran. I was offered no reward for this statement and no force was used to have me write this statement.''

On cross-examination, Officer Roth testified that when the officers first started questioning appellant he denied participation in the burglaries; the officers told him that they had

good evidence, that the other fellow had written a statement, and if appellant desired to do so he could write a statement; appellant said, "Well, I did it with him and you have the information"; the witness said, "Well, it will help you more than it will help us by cooperating with us"; it was after the witness made that statement, that the appellant said he did participate; the witness did not dictate anything that was in the statement, but when appellant asked him questions about spelling and the location of the service station he (witness) helped appellant with spelling and told him that the station was at Avalon and Olive; the witness also told appellant that, if appellant wanted to, he could write at the bottom of the statement that he had been offered no reward.

At the close of the cross-examination, the written statement was received in evidence. No objection was made to the offer of the statement in evidence.

Appellant testified that, on the evening of February 19, he and Hawk were together in Hawk's automobile; about 7:30 p. m. they met two boys at a café and thereafter the four of them went to the home of one Gary; appellant's sister Emmy came there about 8 p. m. and stayed with appellant the remainder of the evening; while appellant and the boys were trying to fix a flat tire at Gary's house, someone whom appellant had not seen before came there in an automobile; then the four boys and Emmy "drove around" with that person, in his automobile, until 10 p. m. when they went to that person's house; appellant and that person had a fight there, and then all the guests left; appellant and his sister and the others walked to Johnny's house and asked him to take them in his automobile to appellant's home, a distance of approximately six blocks; Johnny took them there, and appellant and his sister entered their home about midnight; appellant went to bed about 2 a. m. and did not leave the house until approximately 11 a. m.; he did not go with Hawk and break into the service station or the Garvan office or the café; after appellant was arrested, Officer Roth asked him questions about the burglaries and showed him a statement signed by Hawk; appellant said that he did not have anything to do with the burglaries; the officers struck him in the stomach; after an hour of questioning in another room, appellant wrote and signed the statement; before he wrote the statement he told the officers that he "had done these things"; the written statement was word for word "what was re-

peated" to him (by the officer); he wrote the statement because: he was told it would not make any difference; he was told he would stay there all evening until he admitted he did it; he was knocked around quite a bit by the officer; he was hit on the back of his head and he was tired and sleepy. He testified further that the facts recited in his written statement were not true.

In rebuttal, Officer Roth testified that he did not strike appellant; he did not tell appellant what to write; he told appellant how to spell a few words but he did not tell him to spell "rifle" as spelled therein, namely, "riffle."

The evidence was conflicting as to whether physical abuse of appellant caused him to say or write that he participated in committing the burglaries. The jury resolved that conflict against the defendant.

█ Appellant argues, however, that the confession was not voluntary but was coerced by an implied promise of reward or lesser punishment. The argument is based upon the statement of the officer that, "Well, it will help you more than it will help us by cooperating with us." The officer had arrested Hawk soon after the burglary of the café. Hawk was the man who was crouching in the café and holding a rifle. He had made a written statement that he and appellant committed the burglaries. The officers, after telling appellant that they had good evidence, showed the statement of Hawk to appellant. Thereafter the officer made the statement, above quoted, upon which this argument is based. The appellant told the officers that he committed the burglaries with Hawk. Then he made the written statement that he and Hawk committed the burglaries. No objection was made when the written statement was offered and received in evidence. Appellant testified that he was with Hawk during the evening of February 19. The circumstances surrounding the making of the confession presented a question of fact as to whether the confession was coerced. Under the circumstances the jury might have found that appellant's change of attitude, from denying to admitting, did not result from an implied promise of reward but resulted from being told of the evidence against him and being shown the statement of Hawk. Such a finding cannot be deemed unreasonable as a matter of law. █ In *People* v. *Sameniego*, 118 Cal.App. 165 [4 P.2d 809, 5 P.2d 653], it was said at page 170: "All of the facts and circumstances preceding the confession must be taken into considera-

tion and when the entire proof shows that the confession was made freely and voluntarily the confession becomes admissible even though some isolated expression of the officer, removed from the context might indicate that some inducement was held out to the prisoner.''

In *People* v. *Haney,* 46 Cal.App. 317 [189 P. 338], an officer told the defendant that ''the truth would not hurt him and he better come out with it and tell it.'' It was held therein (pp. 322-323) that said statement should not be construed as an inducement to the making of the confession.

In *People* v. *Cowling,* 6 Cal.App.2d 466 [44 P.2d 441], an officer was asked (p. 470): ''Do you remember saying to him, well, if you come clean, it will be better for you, or words to that effect?'' He replied, ''Well, probably words to that effect.'' It was held therein (p. 471) that signed statements were not procured by coercion or inducement.

In the present case, it cannot be said as a matter of law that the confession was not voluntary. The court did not err in receiving the evidence of a confession.

■ As above stated, the appeal is from the judgment and sentence. ''Affirmance of the judgment carries with it affirmance of the sentence.'' (*People* v. *Perkins,* 147 Cal.App.2d 793, 798 [305 P.2d 932].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.