[Civ. No. 7111. First Appellate District, Division· Two.—November 14, 1929.]

ABRAM C. DENMAN, Jr., Appellant, v. CITY OF PASADENA et al., Respondents.

Bertrand J. Wellman, Geo. W. Padgham and A. G. Alm for Appellant.

Harry M. Ticknor, Roland Maxwell, John Perry Wood and Paul Sandmeyer for Respondents Tournament of Roses Association.

R. C. McAllaster and Harold P. Huls, City Attorneys, for Respondent City of Pasadena.

NOURSE, J.—The plaintiff sued for damages for personal injuries resulting from the collapse of a temporary wooden "grandstand" erected for the convenience of spectators at festivities known as the "Tournament of Roses," held in the City of Pasadena. Demurrers to the complaint were sustained without leave to amend. A motion for leave to amend was later denied and judgment was entered for the defendants. The plaintiff has appealed from the judgment upon a typewritten transcript.

The plaintiff sued the City of Pasadena, its "Board of Directors," the city manager, chief of police and the chief inspector; the Tournament of Roses Association, a corporation, its directors, and all members of the association; Paul F. Mahoney, who constructed the grandstand under permit of the city authorities, and E. H. Lockwood, the owner of the land upon which the grandstand was erected and maintained. The defendant city officials (other than the chief inspector) joined with the City of Pasadena in a demurrer to the complaint. The directors and members of the Tournament of Roses Association joined with the corporation in a demurrer to the complaint. The other defendants named in the complaint do not appear to have been served with process and are out of the case so far as this appeal is concerned.

The two demurrers mentioned came on for hearing at the same time and both were sustained without leave to amend. The plaintiff then moved for leave to file an amended complaint and this motion was denied. The respondents argue that on this appeal we may not consider the substance of the proposed amended complaint because the appellant has failed to follow the settled rule of section 953c of the Code of Civil Procedure, requiring the printing of such portions of the typewritten record as are desired to be called to the attention of the court.

When the appeal is from a judgment following an order sustaining a demurrer without leave to amend, and the appellant urges as one of his grounds that the trial court abused its discretion in denying leave to amend, it is incumbent on the appellant to show error in that regard. Here the appellant, without claiming or making any showing of an abuse of discretion, merely argues that the trial court ''should have'' granted leave to amend. But with no record to support the argument we cannot say that error was committed. (*Stewart* v. *Douglass,* 148 Cal. 511, 512 [83 Pac. 699]; *Philbrook* v. *Randall,* 195 Cal. 95, 104 [231 Pac. 739]; *Duvall* v. *White,* 46 Cal. App. 305, 307 [189 Pac. 324]; *Farber* v. *Greenberg,* 98 Cal. App. 675 [277 Pac. 534, 538].)

But aside from the absence of affirmative evidence of error in this respect we are unable to perceive how the appellant could amend his complaint to state a cause of action against any of these respondents if the facts alleged in his complaint be true. This seems to be conceded by the appellant in his reply brief, wherein he states that the proposed amended complaint was no different than the original ''except as to a more correct statement therein of the defendant City's financial interests.'' Thus as to all defendants other than the City of Pasadena the issues here are confined to the propriety of the order sustaining their demurrer to the original complaint. The virtue of the proposed amendment as to the city alone can be considered more logically in the discussion of the pleadings in relation to that defendant.

The demurrer of the Tournament of Roses Association, and of the members thereof, who joined with the corporation, was properly sustained without leave to amend. The complaint plainly fails to state a cause of action against

any of them, and, assuming, as we must do, that the facts alleged therein are true, no cause could be pleaded by amendment. The facts alleged are that the grandstand was erected by a private individual upon private property with the consent of the property owner. The Tournament Association had nothing to do with the use of this private property, nor with the construction, maintenance or operation of the grandstand. It had no supervision over the sale of seats in the grandstand, no direction or control over the number of people permitted to occupy it, and no participation in the profits from seat sales.

Briefly, the appellant sought to fix liability for his injuries on these respondents by the allegations that they had staged the tournament festival; that through their efforts a large number of people were invited to and did come into the city to view the spectacle and to attend a football contest which was conducted in a stadium constructed by the association for that purpose; that the financial interest of these respondents in the tournament was in the large profit they received from this contest; that prior to the football game, and as an inducement to people to purchase tickets therefor, these respondents conducted a spectacular parade through certain designated streets of the city; that, by occupying the entire width of these streets for the purposes of this parade, these respondents forced and "invited" spectators to purchase tickets for seats on the viewing grandstands; and that these respondents knew or "should have known" that this particular grandstand was dangerous, a public nuisance, and a menace to the lives and safety of those who occupied it.

Aside from the allegations of knowledge, or means of knowledge, of the unsafe condition of this particular grandstand, every other allegation of the complaint relating to these respondents pleads this and nothing more—a situation whereby these respondents made it possible for the appellant to put himself in a position in which, wholly through the act of another, he was injured. Thus the complaint merely pleads facts which would tend to charge these respondents with the remote cause of appellant's injuries while also pleading facts which show beyond doubt that another's acts were the sole proximate cause of such injuries.

The rule is settled that "if injury has resulted in con-

sequence of a certain unlawful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote." (Cooley on Torts, 2d ed., p. 73, quoted in *Trice* v. *Southern Pacific Co.*, 174 Cal. 89, 96 [161 Pac. 1144].) The reason for such a rule is well illustrated by the efforts of appellant to attach liability upon these respondents. Their "act of negligence" was in inviting a large concourse of people into the city and in leading a parade along a city street in front of the lot on which this grandstand was erected. But if, without having any supervision or control over the grandstand, they are to be held responsible for any injuries caused by the negligence of the owners thereof they would likewise be liable for all injuries arising out of the negligence of all railroads and other public conveyances bringing people into the city on this same "invitation." Likewise, it is possible that people stood upon the housetops of private dwellings and that many hung out of private windows to see the spectacle. Some boys might have climbed trees or telephone poles to get a better view. Would there be any reason in a contention that these respondents would be liable for injuries resulting under such circumstances? In *Wright* v. *City of Pasadena*, 37 Fed. (2d) 902 (U. S. Dist. Court, Aug. 19, 1929), Judge McCormick, in sustaining a demurrer to a complaint identical with the proposed amendment filed herein, held that it failed to allege any act or acts of the association which operated to cause the injuries complained of as a proximate cause, and that "it appears to the court that every merchant of Pasadena who financially contributed to the success of the Tournament of Roses and every property owner thereof who shared in the emoluments of such event would be liable to plaintiff for damages if the theory of liability as set forth in the amended complaint were tenable." We might add what is a matter of common knowledge, that public fairs, festivals and celebrations have been held in this country since the days of the first Indian war dance. That many of these affairs have been conducted for profit while many (as the complaint alleges was the case here) have been conducted to advertise or "boost" a particular local-

ity. Likewise, football games have been held for the financial profit of the management and as a means of education and training of the participants, and these have attracted large crowds of people. It is also a matter of common knowledge that in many of these events accidents have occurred to the guests while either going to or returning from the place of amusement. If those managing such events are legally liable for personal injuries to their guests which are received on private property over which the management has no control, and which are the result of the negligence of private individuals over whom the management has no supervision or control, we would expect to find some judicial expression recognizing such liability. As appellant has failed to cite any decision in support of his theory, and as we have found none, we may assume that the point should be decided on the general principle that liability rests on negligence, that negligence is "the want of such care as a person of ordinary prudence would exercise under the circumstances of the case" (19 Cal. Jur., p. 548); and that a person of ordinary prudence under these circumstances would not assume the burden of controlling the activities of every property owner in the locality, nor would he hold himself out as an insurer of the safety of all visitors while engaged in their private amusements. ■ Therefore, when through a long period of years a particular mode of conduct has been followed as the proper and reasonable mode for a prudent man to follow under particular circumstances one cannot be charged with negligence in following that mode of conduct alone. The proper conduct of "a person of ordinary prudence" may thus be established by long approved practice and custom and this becomes just as potent as a standard of conduct prescribed by law. Manifestly a complaint which merely alleges that a defendant had done the very acts which the law prescribes he must do under the circumstances fails therein to charge negligence on his part. And since "the test of negligence with respect to instrumentalities, methods, etc., is the ordinary usage and custom of mankind" (20 R. C. L., p. 27), a complaint which discloses that the parties merely followed such recognized usage and custom and which does not plead any departure therefrom or any other act or omission which a prudent person would not have done or omitted under the same circumstances does

not state a cause of action for negligence. The rule of law is succinctly stated in *Tallman* v. *Nelson,* 141 Mo. App. 478, [125 S. W. 1181, 1183], as follows: "If one does what the great body of other prudent men do, in a like situation, he is not negligent." And in *Brands* v. *St. Louis Car Co.,* 213 Mo. 698 [18 L. R. A. (N. S.) 701, 112 S. W. 511, 514], it is said: "No jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business is a negligent way for which liability shall be imposed."

But it is argued that as these respondents knew "or should have known" that this particular grandstand was unsafe they come within the rule of *Indianapolis St. Car Co.* v. *Dawson,* 31 Ind. App. 605 [68 N. E. 909]. In that case the street-car company was held liable for injuries to a colored man and woman whom they had conveyed to a park where they were assaulted by whites. Liability was attached to the car company because it knew that there was an intense feeling against colored people at the park, but failed to impart this information to its passengers. This rule simply goes back to the general principles which we have been discussing. An ordinarily prudent person would not invite, urge or carry another into a known place of danger without warning. But the difficulty with the complaint in this respect is that it is so inconsistent and contradictory in its allegations that it does not come within the rule. To say that the defendant knew this grandstand was unsafe is more or less a conclusion of the pleader; but to say in the same sentence that he "should have known" it is to say that he did not know. Further inconsistencies appear from the allegations of specific facts which contradict this general allegation of knowledge. Thus it is alleged that this grandstand was erected, maintained and controlled by a private individual on private property for "his own pecuniary benefit and profit," pursuant to license therefor by the municipal government, and subjected to inspection as to its safety by the proper public officials. To plead generally in face of these specific facts that these respondents should have known that this grandstand was unsafe compels us to presume, contrary to the legal presumptions found in the code, that these public duties were not performed and that the public officials were guilty of fraud. But "where a

conclusion is alleged and also the special facts from which the conclusion is drawn, if the special facts are inconsistent with and do not support the conclusion, the former control, and the sufficiency of the complaint is to be determined from the special facts pleaded." (*Little* v. *Union Oil Co. of Cal.*, 73 Cal. App. 612, 619 [238 Pac. 1066, 1068], where many cases are cited.)

It is argued that the averment that "the said defendants" *caused* the grandstand to be constructed and to remain in a dangerous condition is broad enough to include the Tournament Association, its officers and members. But this allegation follows the paragraphs which are definitely tied down to the City of Pasadena and its officers, and the expression "said defendants" has no reference to the association, its officers or members. Furthermore, this general averment is in direct conflict with the pleading that the defendant Lockwood "caused" this particular grandstand to be erected "for his own pecuniary benefit and profit and had the right and authority to control the construction, use and seating capacity thereof." Here again the averment of specific facts must control over the general conclusions of the pleader. Taking these allegations together it is apparent that the pleader means that the association by staging the festival and inviting guests to witness the parade offered an inducement to Lockwood to obtain pecuniary profit by constructing the grandstand, but that the latter did this for his own benefit and had sole supervision and control over it. Here again these respondents are merely charged with the remote cause of the injury to appellant while the proximate cause is definitely laid to others over whom these respondents had no control.

Appellant cites a large number of cases, generally referred to in the briefs as the "Bathing Beach," and "Amusement Park" cases, holding that those conducting such places of amusement are liable for injuries to patrons on the premises. Some of these cases hold that the owner is liable where the injury is the result of the negligence of a concessionaire. It would serve no purpose to refer to these cases other than to say that without exception they place liability on the party who had the supervision and control of the premises and upon whom rested the legal duty to keep the premises in a safe condition. Thus, in *Johnstone* v. *Panama-Pacific*

*I. E. Co.,* 187 Cal. 323, 329 [202 Pac. 34, 36], it is said "there was a duty imposed upon respondent (Exposition Company) to use ordinary care to keep *its grounds,* including the thoroughfare, in a safe condition for its invitees." In that case the exposition company had granted a concession to another to rent electric vehicles to visitors to be operated by the party renting them throughout the exposition grounds. The plaintiff, while walking along one of the paths maintained in the grounds by the exposition company for pedestrians, was injured by being struck by another visitor while operating one of these electric vehicles. The ruling followed the great weight of authority—that the owner was responsible for the premises under its control. This rule is clearly stated in *Thornton* v. *Maine State Agr. Soc.,* 97 Me. 108 [94 Am. St. Rep. 488, 493, 53 Atl. 979, 981], where it was said: "Therefore, having invited the public to its fair, it was the duty of the defendant to use reasonable care to keep its grounds and the usual approaches to them, so far as the approaches were under its control, in a safe condition, safe for all who were invited." The bathing beach cases follow the same principle. Even where the injury occurred in the public water of the ocean it was held that the proprietor of the beach resort was bound to exercise reasonable care for the safety of those he invited to patronize his resort. But none of the cases cited supports the theory of appellant that the owner or proprietor is liable for injuries arising beyond the premises and on private property over which another has full supervision and control.

What has been said concerning the allegations relating to the Tournament Association applies equally to its directors and members and the demurrer on their behalf was properly sustained.

The demurrer of the City of Pasadena involves a consideration of the capacity in which it was acting at the time of the injury. Appellant takes the position that the city was financially interested in the tournament and hence was acting in a proprietary capacity. The argument is that the proprietary capacity of the city is disclosed in the averments of the complaint that the city received a large annual profit from pay features of the festival, including the football game, and that the tournament parade and the football

game were held "for the immediate financial benefit and profit of said defendant City of Pasadena's citizenry and tradespeople, . . . and for the future and ultimate pecuniary profit of its landholding and real estate property owning class." But it is also alleged that said city issued permits for the building of grandstands to seat the guests and "supervised, inspected and approved the security, safety and carrying capacity of said grandstands." We may concede that the complaint is sufficient to charge the city with acting in a proprietary capacity in conducting the football game and other pay features of the festival, but so far the city is merely charged with the remote cause of appellant's injuries—furnishing the occasion whereby the appellant found himself in the city on the day of the injury. The proximate cause of these injuries—the collapse of the grandstand—is alleged to have been due to the city's employment of unskilled and incompetent inspectors.

Manifestly the granting of a permit to construct a grandstand on private property and the supervision and inspection of its construction is a governmental function. That a municipality is not liable for the carelessness of its officers or employees under such conditions is settled by the authorities. (*Wikstrom* v. *City of Laramie,* 37 Wyo. 389 [262 Pac. 22, 23]; *Miller* v. *City of Palo Alto,* 208 Cal. 74 [280 Pac. 108].)

Through the maze of inconsistencies and contradictions in the complaint the real charge against the municipality is that in permitting the Tournament Association to conduct its parade along the public streets it indirectly invited the pedestrians to purchase seats in the grandstand the better to view the spectacle. The parade is said to be the inducement for the spectators to enter the stadium and purchase tickets for the football game. In the sale of these tickets the city is said to have had a direct financial interest. The positive allegations that the grandstand which collapsed was erected and maintained for the pecuniary profit and benefit of the defendant Lockwood, who had the control over its construction and use, negatives the general innuendoes that the city had some part in the construction and use of it.

Thus, so far as the city is sought to be charged with any liability for the injuries in its proprietary capacity, the

complaint pleads the most remote cause that might be imagined. If the city is liable under such conditions then the doctrine of proximate cause becomes a mere shadow. It might as well be said that one holding a ticket to this football game and injured while traveling on the public highway hundreds of miles from the place of the contest could hold the city liable because he had been induced to travel by the city's advertisement of its New Year's climate.

In answer to the city's demurrer the appellant again cites a number of "Bathing Beach" and "Amusement Park" cases. In the former the owner of the resort is held liable for injuries to his guests received while bathing in the waters adjoining the resort. The rule of these cases is that because the patrons paid for the privilege of bathing in the adjoining waters, the proprietor owed them the duty of keeping the waters reasonably safe or of providing life guards or other means of protecting the patrons from injury. The rule of the amusement park cases is stated in *Stickel* v. *Riverview etc. Park Co.*, 250 Ill. 452 [34 L. R. A. (N. S.) 659, 95 N. E. 445, 446], where it is said: "In amusement places where space is granted for conducting attractions . . . there is unanimity of authority that the owner assumes an obligation that the devices and attractions operated by the concessioners are reasonably safe for the purposes for which the public is invited to use them." In each group of cases there is authority holding that the owner of private property is liable for injuries received on public property adjoining when the use of such public property is a necessary incident to the use of the private property. But none of the cases hold the converse of this—that the public as the owner of the public property is liable for injuries received on private property over the use of which the public had no control.

It is argued that the rose festival was a joint enterprise and that, because the city expected some profit from the football game, it must be held to have been jointly interested with Lockwood and Mahoney in this grandstand. The answer to the argument is that the specific allegations are that the city did not have any such interest. If the general allegations of the complaint are true all "florists, hostelries, theatres, sweet shops, cafes, food venders, drink dispensers . . , vacant lot owners . . . and real property

owning class" would be jointly interested in the enterprise because it is alleged the *festival* was held for their "immediate financial benefit and profit." But if the city were held liable for every act of negligence of its citizens under such circumstances, then it would become an insurer of the safety of the individual far beyond anything contemplated in its incorporation.

As to the city officials and employees who are joined as parties defendant, the complaint does not pretend to state any cause of action against them. There is not a word in appellant's briefs defending his action in joining them and we may, therefore, treat the point as having been abandoned because the duty is on appellant to show that error has been committed. (*Etienne* v. *Kendall*, 202 Cal. 251, 257 [259 Pac. 752].)

The judgment as to all defendants is affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 12, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 13, 1930.

All the Justices concurred.