[Civ. No. 4847. Third Appellate District.—November 6, 1933.]

L. A. COUGHMAN, Respondent, v. W. HARMAN, Appellant.

Edward Bickmore for Appellant.

C. Ray Robinson and James D. Garibaldi for Respondent.

PLUMMER, J.—The plaintiff in this action, the widow of D. A. Coughman, deceased, had judgment against the defendant in the sum of $5,000 damages for the death of said D. A. Coughman, alleged to have been caused by the negligence of the defendant. From this judgment the defendant appeals.

The appeal is also taken from the denial of the defendant's motion for a new trial. As no appeal lies from an order denying a motion for new trial, the appeal, in so far as it purports to be taken from such denial, is hereby dismissed.

The complaint alleges that on or about the thirtieth day of December, 1931, the defendant, while proceeding in a westerly direction on the Los Banos highway, a public highway in the county of Merced, near the intersection of the Los Banos and El Nido roads, drove and operated a certain Chevrolet automobile in a careless and negligent manner, and without the exercise of due care and skill, so that said automobile ran into and instantly killed D. A. Coughman, the husband of the plaintiff in this action. The incident which we have just mentioned occurred at about 5:30 o'clock P. M. on the day mentioned. The cause was tried before a jury, which returned a verdict in favor of the plaintiff for the sum of $5,000. The collision between the automobile and the deceased occurred on or near the line between Madera and Merced Counties, at a place known as the "Y", caused by the juncture of the paved highway leading directly south from the city of Merced and with the paved highway leading west over the Pacheco Pass into the Santa Clara Valley. At the "Y" caused by the juncture of these two highways, an oil and gas station was owned and operated by C. A. Coughman, a son of the deceased. South of the service station and across the highway leading to the Pacheco Pass was the residence or cottage occupied by C. A. Coughman, and by the plaintiff and her husband. At the time of being struck by the automobile the deceased had crossed the highway from the south and had reached a point about 8 feet north thereof, being a portion of the graveled premises surrounding the service station to which we have just referred. There were no crossings or pedestrian lanes leading across the highway from the residence occupied by 'the deceased to the service station. In driving from the south, one taking the Los Banos or as it is also called, the Pacheco Pass highway, must make a left-hand turn.

The record shows that automobile drivers on the highway in question coming from the south frequently drive at such a speed that the momentum with which they are driving, in making the turn, carries their cars off the paved portion of the highway onto the graveled part of the premises surrounding the service station. Just prior to reaching the turn leading westward on the Los Banos or Pacheco Pass highway the defendant had turned on the lights of his machine. At or near a culvert to the south or southeast of the service

station the defendant, in driving northward, passed a truck and trailer driving southward. The speed of the truck and trailer was estimated at from 35 to 40 miles an hour. The defendant, in driving northward and turning onto the Los Banos or Pacheco Pass highway to the westward, estimated his speed at 35 to 40 miles an hour. Just after the truck had passed to the southward it appears that the deceased started across the highway in a "little trot", and continued northerly until he reached a point heretofore stated at about 8 feet, by some of the witnesses estimated at from 6 to 8 feet, on the graveled premises north of the paved portion of the highway. The defendant, coming from the south, according to his own testimony, saw the deceased just after the truck had passed, and instead of turning to the south or keeping on the paved portion of the highway, turned to the right, apparently with the intention of passing between the deceased and the service station, over the graveled premises which we have described. The defendant's version of swerving to the right was that in so doing he thought to pass in front of, and to the right of the deceased. In so doing the automobile did pass in front of the deceased, but at just this moment the automobile and the deceased came in contact somewhere near the place where the left front fender joins the running-board. In the contact the deceased was thrown several feet, receiving injuries from which he died in a very few minutes. The tracks on the pavement or gravel indicated skid marks of some 45 feet from where they began to where the deceased was killed, and continued on some 75 feet beyond that point, showing that from the time the brakes on the automobile were forcibly applied the car skidded approximately 120 feet. There is nothing in the record showing that the defendant, as the driver of the automobile, gave any sound or warning of his approach, nor is there anything in the record indicating that the deceased had any information, warning or knowledge of the approach of the defendant's automobile. Under such circumstances, so far as the deceased is concerned, the presumption applies that he was taking ordinary care for his safety, and this presumption comes to the aid of the plaintiff in this case (secs. 1961, 1963 and 2061, Code Civ. Proc.; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529]), and was entitled to be considered by the jury in determining whether

the deceased was or was not guilty of contributory negligence in inducing the event which caused his death.

■ The first contention of the appellant is that under subdivision c of section 131½ of the California Vehicle Act, which became effective August 14, 1931, the defendant had the right of way, and, therefore, that the deceased should not have been crossing the highway. This contention goes beyond the terms of the subdivision referred to, which reads as follows: "Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk, shall yield the right of way to vehicles upon the roadway, provided that this provision shall not relieve the driver of the vehicle or the pedestrian from the duty to exercise due care."

Assuming that the appellant's contention is correct that this rule as to the right of way applies in the open country where there are no crosswalks or cross-lanes, yet at the same time it does not relieve an automobile driver from the obligations imposed upon him by subdivision a of section 113 of the same act, which requires that the driver of a "vehicle upon any of the public highways of the state shall drive the same at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person".

The map and photographs introduced in evidence show a physical condition which the jury had a right to take into consideration in determining whether one driving an automobile at 40 miles an hour was driving the same at a careful and prudent speed, or whether the speed was such as to endanger life, limb or property in the vicinity of the service station. The photographs show the juncture of roads which may be approached from several directions, the curves in roads, the residence of the owner and attendant of the service station, and the location of the service station which would have to be approached by crossing the highway, in order to reach the same.

■ There being nothing in the record to establish the contrary, the presumption to which we have referred that the deceased was taking due care for his own safety, the fact that he had reached a point 6 or 8 feet north of the

paved portion of the highway, would support the conclusion of the jury that the deceased had taken the precautions necessary and had reached the place where his safety would be reasonably assured had the automobile been operated prudently and with due regard to the safety of limb, life or property of others. ▮ It was for the jury to determine whether, as a prudent and careful driver, the defendant should have given some warning of his approach, or should have remained upon the highway and if necessary to avoid a collision, swerve to the left instead of going across to the north of the highway onto graveled premises to a place which a pedestrian would ordinarily consider a place of safety. These were questions for the jury. Just as stated by the court in *Cooley* v. *Brunswig Drug Co.,* 30 Cal. App. 58 [157 Pac. 13], quoting from Judge Cooley's Work on Torts, to wit: "Negligence is the failure to observe, for the protection of the interests of another person, that degree of care, protection and vigilance which the circumstances justly demand, whereby such person suffers injury." And then adds: "It is a relative term, depending upon the inferences to be drawn from many facts and circumstances which it is the province of the jury to draw in each particular case". Quoting further as follows: "It can very seldom happen that the question is so clear from doubt that the court can undertake to say as a matter of law that the jury could not fairly and honestly find for the plaintiff." (Citing a number of cases.) And then adds: "And when they do so find upon facts as to which reasonable minds might differ in the conclusion reached, their decision is not subject to review on appeal."

Again, as said by this court in the case of *Fahey* v. *Madden,* 58 Cal. App. 537 [209 Pac. 41]: "Moreover, since he was walking away from the pavement, and might reasonably expect that the driver would attempt to keep his machine thereon, what more natural thing than for the pedestrian to try to get still farther away when he found that the machine was bearing down upon him. Manifestly, his position upon the highway must be regarded in determining what movement reasonable care would require of him when it appeared to him that he was in danger of being run over." In the Fahey case, just as in the present instance, the driver turned the course of his automobile in

the direction toward which the pedestrian was walking, went off the paved portion, and inflicted the injury.

A somewhat similar case is that of *Hamblin* v. *Schultis*, 64 Cal. App. 104 [220 Pac. 320], where two pedestrians were crossing a street, and one of whom was injured just as she had reached the curbing, by an automobile which was swerved in the direction in which the pedestrians were walking, in an attempt to pass in front of them. Such instances present facts for the jury to determine, and whether found in favor of the plaintiff or the defendant, the rule applies that the determination of the jury upon the facts is binding upon appeal, and courts cannot declare as a matter of law either that the plaintiff was negligent or that the defendant was negligent.

The record in this case, as we have stated, does show that the brakes were applied to the automobile with considerable force at a distance of some 45 feet from where the deceased was struck, but it also shows that the automobile traveled some 75 feet beyond that point before it came to a stop. We find no testimony in the record as to how far an automobile, moving at a speed of 40 miles an hour, will travel after the brakes have been applied with such force as to skid the wheels, but we think the jury had a right to take into consideration the 120 feet that the automobile skidded along in determining whether the defendant was driving at only 40 miles an hour, or whether he was exceeding that limit by a great many miles.

Again, it was within the province of the jury to determine, under all the circumstances, whether the defendant was confronted by such a sudden peril that he should be excused for not exercising that certain degree of care or caution which in the light of after events might be shown to have been most advisable. In this particular the court specifically instructed the jury that this rule of law should be taken into consideration in determining whether, under all the circumstances, the defendant was excusable or liable for the injuries inflicted by his manner of driving.

The cases cited by the appellant to the point that there can be no recovery if the defendant, after becoming aware of the plaintiff's peril, did what an ordinarily prudent person would have done under the same or similar circumstances to avoid injury, sufficiently support the rule of law

just as contended for, but the facts bearing upon the question as to whether the defendant so acted are to be determined by the jury unless a situation is presented where reasonable minds cannot differ. Even under the subdivision of section 131½ of the California Vehicle Act, the appellant did not have the absolute right of way. That right of way is conditioned upon the driver of the vehicle exercising due care. Nor does that right of way extend to the entire width of the highway belonging to the state.

In the instant case the record shows a macadamized strip 20 feet in width constructed and designed for vehicular traffic. The graveled premises leading from this macadamized strip to the service station constituted no part of the roadway over which the section accorded to the defendant a prior right. The moment the automobile left the macadamized strip and started over across the graveled premises where the deceased was struck, the prior right claimed by the defendant ceased. The deceased being on the graveled premises first and in a place of safety where, if the defendant had remained on the part of the roadway over which he had priority no injury would have resulted, the priority of right was in the deceased and not in the driver of the automobile.

In the absence of evidence it cannot be assumed that the deceased had any knowledge that he was in danger of being injured after he had crossed the macadamized portion of the roadway and had reached the situation where automobiles are not supposed to travel and where automobile drivers had no right of way. The evidence shows that the appellant was aware of the presence of the deceased. Thus, as stated in California Jurisprudence 1928, Permanent Supplement, page 258: ''Where the evidence shows that the plaintiff (deceased) attempted to cross the street or highway in advance of the defendant's oncoming vehicle, a recovery is sustainable unless it appears that to the plaintiff's (deceased's) knowledge the defendant was not aware of his presence, or for some reason could not or would not slacken speed, stop or swerve his car. The issue as to the plaintiff's (deceased's) appreciation of the danger of collision is to be determined primarily with the view to his knowledge as to the speed of the vehicle and its distance from him at the time when he attempted to cross the way.''

Here, the evidence establishes conclusively that even if the deceased had knowledge of the approach of the automobile being driven by the appellant, he had time to, and actually did, cross that portion of the roadway set apart for the use of automobiles.

As to the points relied upon for reversal which we have been considering it must be held that the appellant cannot be relieved from liability as a question of law.

█ As an additional ground for reversal the appellant contends that the damages awarded were and are excessive. The record shows that the plaintiff at the time her husband met his death was 64 years of age; that the deceased was aged 83 years and 9 months. The life expectancy of the plaintiff, according to mortality tables was 11.67 years; that of the deceased, 3.20 years. The deceased was earning approximately $50 a month; was in good health, physically and mentally sound. Upon these facts it is contended that for 3.20 years the deceased would have earned the sum of $1920, one-half of which would have probably been used for his own support, leaving $960 for the support of the plaintiff; and that the remainder of the damages allowed, covering comfort, loss of society and protection for an estimated 3.20 years, was and is grossly excessive.

There is nothing in the record indicating that the jury was actuated by malice or a desire to award the plaintiff an undue sum of money as damages for the losses sustained by her. While the mortality tables allowed the deceased only 3.20 years in which to live, those tables are only an approximation of how long anyone may be said to survive, and by no means constitute an absolute limit as to how many years a person of sound mind and body may remain alive. Common experience teaches us that many individuals live beyond the period of life which the tables would have allotted to the deceased in this case. We do not very well perceive how this court can say as a matter of law that the sum of $4,000 is an excessive sum to award a widow for the loss of the comfort, protection and society of her husband, even though mortality tables limit his supposed span of life to a very few years.

There being nothing to indicate passion or prejudice on the part of the jury, we find no reason for disturbing the verdict on the grounds of excessive damages. A human life,

if worth anything to another, is certainly worth at least the sum of $4,000. The jury was specifically told that nothing could be allowed as compensation for grief or sorrow.

■ It is finally contended that the court erred in its instructions to the jury. In this particular our attention is called to the following: "You are instructed that it is proper for you to consider the value in money of the benefits which from all the circumstances of the case, the plaintiff, Mrs. D. A. Coughman, might be reasonably expected to derive from her husband, D. A. Coughman, during the remainder of her life expectancy, assuming that her husband's life was to be continued for that period." This instruction appears to have been based upon the language contained in the opinion of the court in deciding the case of. *Parsons* v. *Easton,* 184 Cal. 764 [195 Pac. 419], where it is said that the life of the deceased might have been assumed to continue during the lifetime of the person claiming damages. The facts in the case of *Parsons* v. *Easton, supra,* justified the language there used, but the language used in an opinion is not always a correct basis upon which to build an instruction to be used in another case where the facts are dissimilar. In the case at bar the life expectancy of the plaintiff was much greater than the life expectancy of the deceased. Therefore, it was incorrect to advise the jury that in determining damages, it might be assumed that the life of the deceased would continue during the lifetime of the plaintiff, the one having the much longer life expectancy. ■ However, there are two reasons why the verdict cannot be disturbed on account of the giving of an incorrect instruction. The first reason is, just as we have stated in this opinion, that the damages awarded do not appear to be excessive, or are not shown to have been the result of any passion or prejudice on the part of the jury. This being the case, section 4½ of article VI of the Constitution applies, for the simple reason that neither as a question of fact nor as a question of law does it appear that there was any miscarriage of justice. The plaintiff being entitled to damages, it follows that she was entitled to a verdict which would fairly compensate her for the loss sustained.

■ The second reason which precludes a reversal for the giving of the quoted instruction is that the appellant has made no attempt whatever to comply with Rule VIII of

this court, where in cases it is alleged that instructions given to the jury are erroneous, all the other instructions bearing upon the same question must be printed in the appellant's brief. For aught that appears in the appellant's brief, it may be that the court correctly instructed the jury as to the measure of damages and the manner of determining the same. Not having called our attention to all the instructions given, and nothing having been stated indicating that other instructions were not given on the subject of damages, we are not called upon to do so, yet we have examined the record and found that the court did correctly instruct the jury as to the elements that should be considered by them in estimating the damages. The limited amount of the verdict shows that such instructions were followed by the jury.

Irrespective of this omission, however, we think that as stated, the error is cured by section 4½ of article VI of the Constitution.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.