[Crim. No. 3736.   Second Dist., Div. Two.   Oct. 25, 1943.]

THE PEOPLE, Respondent, v. JAMES A. FREEMAN, Appellant.

George S. Carter for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

MOORE, P. J.—This appeal is from the order denying defendant's motion for a new trial and from the final judgment of conviction for violating section 500 of the Vehicle Code by the commission of negligent homicide.

The grounds for appeal are (1) the insufficiency of the evidence to support the verdict and (2) errors committed by the court in the refusal of certain instructions and the giving of others.

(1) At the times herein mentioned the defendant resided in the city of Pasadena where he was engaged in the mercantile business. He had a branch store in the neighboring city of Alhambra which was operated by one Ruben Pfieffer. The latter's residence was in the adjacent city of San Gabriel. About one o'clock in the afternoon of January 24, 1943, defendant drove from Pasadena to the home of Mr. Pfieffer. He remained three hours during which he felt ill and drank two highballs of Seven-up and whiskey. About 4:30 o'clock p. m. he started to drive back home. His return was by way of the intersection of Winston Avenue and California Street which is about four miles from the Pfieffer place. During the last 700 or 800 feet before arriving at the intersection he drove at a speed in excess of 60 miles per hour. Upon entering the intersection, his car collided with another driven by Mrs. Clark and in which Miss Della Heath was riding. As a result of the collision Miss Heath was killed and Mrs. Clark severely injured. Details will appear hereafter in the instruction under attack.

The charging part of the information was that defendant wilfully drove an automobile with reckless disregard of and wilful indifference to the safety of others, thereby injuring Miss Heath who died on the same day as the proximate result of her injuries suffered on that occasion. The sole defense to

the accusation was that the defendant was unconscious from the moment he entered his car at the Pfieffer home until after the accident when he stood upon a nearby lawn. His testimony was in support of that defense. Promptly after the accident, defendant was given a sobriety test at the Huntington Memorial Hospital and was pronounced sober. The defense is based upon section 26, subdivision 5 of the Penal Code which reads as follows:

"All persons are capable of committing crimes except those belonging to the following classes: . . . FIVE. Persons who committed the act charged without being conscious thereof."

Stated in other words: No person can be guilty of a crime who is not conscious at the time of doing the act charged. ·

In order to violate section 500 of the Vehicle Code a motorist must drive his automobile with a reckless disregard of or wilful indifference to the safety of others, which is the equivalent of "the intentional doing of an act with wanton and reckless disregard of its possible results." (*People* v. *Young*, 20 Cal.2d 832, 837 [129 P.2d 353].) It is the same as wilful misconduct (*People* v. *McNutt*, 40 Cal.App.2dSupp. 835 [105 P.2d 657]) which implies at least the intention of doing an act either with knowledge that serious injury is a probable result or the intention of doing an act with a wanton and reckless disregard of its probable result. (*Howard* v. *Howard*, 132 Cal.App. 124 [22 P.2d 279].)

In support of the information the prosecution proved that while at the home of his friend defendant drank whiskey; that he had driven motor cars for 26 years; that he had never been unconscious on the occasion of any other drive; that he had never acquainted the motor vehicle division of such a tendency, although the blanks used to make his driver's application requested such information; that he made the drive at an excessive speed and entered the intersection without stopping and collided with the automobile of Mrs. Clark. The proof was such that under correct guidance it would have supported either a verdict of guilty as charged or a verdict of not guilty on the theory that defendant was a victim of epilepsy which caused him to be unconscious during the time elapsing from the moment of his departure from the Pfieffer home until after the accident.

In answer to a comprehensive hypothetical question four physicians testified that at the time of the collision of his automobile with that of Mrs. Clark defendant was, at the

time and in the course of his drive from the Pfieffer's, unconscious; also, that his spells of unconsciousness and his frequently recurring violent headaches were due to epilepsy from which appellant had suffered many attacks since he was nine years of age and had been unconscious at the time of each attack until one that occurred about six years prior to the collision.

From the recitals in the hypothetical question it appears that there was proof received that defendant was unconscious at the time of the collision. While the question was, in the main, predicated upon defendant's testimony which might have been rejected *in toto* by the jury, yet he was entitled to have the benefit of expert proof based upon all evidence admitted and he was likewise privileged to have an instruction as to the law with reference to the guilt of a motorist if under the circumstances recited the jury should find him to have been unconscious at the time of the collision by reason of epilepsy.

Predicated upon the evidence admitted the court read the following instruction to the jury:

"In this case the evidence is undisputed that the defendant has been subject to attacks which all of the experts called in the case have classed as epilepsy; that these attacks have caused him to lose consciousness for varying periods of time; that on the day of accident in question & at his friend's house he became ill, felt extremely nervous with no particular reason for so feeling; that upon the insistence of his friend he had two whiskey highballs; attempted to call his family doctor at least five or six times; that at about 4:20 p. m. he left his friend's house saying to his friend, in substance, 'I think I can make it home & that is where I belong.'

"It is the testimony of the experts & the defendant that he was unconscious at the time of the accident.

"Under the circumstances above related and all the other evidence in the case it is for you, the jury, to determine the following questions.

"1. Was the defendant, knowing he was subject to the attacks of unconsciousness as disclosed by all the evidence, and being in the condition the evidence shows he was at his friend's house,—was he guilty of a reckless disregard of the safety of others in undertaking to drive his automobile along the public highways and as I have just defined 'reckless disregard' for you.

"2. Did he know or have reason to know of facts which would lead a reasonable man to realize that such conduct on

his part would create an unreasonable risk of bodily harm to others and would also involve a high degree of probability that substantial harm would result to others?

"If you answer these questions in the affirmative then you will find the defendant guilty as charged in the information and this in spite of the fact that he was unconscious at the time of the accident, if you so find.

"On the other hand, if you find that the defendant was unconscious at the time of the accident, and you answer the two questions I have just propounded in the negative, then you must find the defendant not guilty unless you shall also find that the unconsciousness was proximately caused by his voluntary use of intoxicants, for intoxication."

In order fairly to evaluate the meaning of the language of the foregoing instruction, we turn to a consideration of the physical and nervous condition from which defendant suffered according to the proof. Basing their opinions upon his recitals of his experience, the four experts testified that on the occasion of his accident defendant was suffering a loss of consciousness and that it was due to epilepsy. "Epilepsy is defined as the falling sickness; a chronic apyretic nervous affection, characterized by seizures of loss of consciousness, with tonic or clonic convulsions." (Lippincott's Medical Dictionary, revised edition.) "It is a chronic nervous affection characterized by sudden losses of consciousness." (Gould's Medical Dictionary, fifth edition.) "It is a disease of the brain which occurs in paroxysms with uncertain intervals between; . . . the attack is characterized by loss of consciousness, sudden falling down, distortion of the eyes and face . . . and by muscular spasms." (Black's Law Dictionary, second edition.)

Epilepsy is only one of a number of causes for unconsciousness. It differs from insanity in that the latter generally means an unsoundness of mental condition which modifies, or removes, individual responsibility because it "is such a deprivation of reason that the subject is incapable of understanding and of acting with discretion in the ordinary affairs of life." (Bouvier.) The epileptic displays no such loss of brain function although at the time of or immediately preceding a convulsion he may experience psychical aurae such as a dreamy state or one of terror. (Osler's Principles and Practice of Medicine.)

In view of the behavior of the victim of epilepsy as defined by the foregoing authorities, and in the light of the expert proof of defendant's condition, we now turn to a consideration of the above instruction.

■ The instruction is assumptive and arbitrary. It assumes that, before leaving Pfieffer's, defendant had a present consciousness of his past sufferings, and that he had the normal powers of his will. It should have left for the jury's determination what the evidence disclosed the condition of defendant to be while at the Pfieffer home. It assumes that, throughout the three hours of his visit, his mind was clear, that his vision was unclouded, that he knew and comprehended the meaning of his current sensations, and that he was capable of appraising his contemplated effort to drive his car upon the highways. It was not whether he knew of facts which would lead "a reasonable man to realize" that such a drive would create "an unreasonable risk of bodily harm to others" but rather the questions for the jury's determination were (1) whether appellant failed to do something which a reasonably prudent man would under the circumstances have done, or (2) whether he omitted to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs would do, or (3) whether he exhibited the want of such care as a person of ordinary prudence would exercise under the same circumstances. (*Denman* v. *City of Pasadena,* 101 Cal.App. 769, 775 [282 P. 820] ; *Bolar* v. *Maxwell Hardware Co.,* 205 Cal. 396 [271 P. 97, 60 A.L.R. 429] ; *Coughman* v. *Harman,* 135 Cal.App. 49 [26 P.2d 851] ; *Wolfsen* v. *Wheeler,* 130 Cal.App. 475 [19 P.2d 1004] ; 19 Cal.Jur. 548.) Moreover, it was for the jury to determine whether defendant, while he was visiting the Pfieffer home and at the time of his departure therefrom, had the power of an ordinarily prudent man to conceive, and estimate the significance of, his undertaking the drive back to Pasadena. If he was unconscious at the end of a four mile drive, the jury had to determine whether the transition from a state of normal consciousness to that of unconsciousness was sudden; whether it occurred on the highway prior to the collision or whether it had taken place at some time during his visit with Mr. Pfieffer and as a result of an epileptic attack. If the defendant was on the verge of losing consciousness from epilepsy before commencing his

homeward journey it is probable that he might before starting already have lost the power to envisage the consequences to others of his undertaking. And what is of even greater importance, in order for him to be guilty of driving with a reckless disregard of, or with a wilful indifference to, the safety of others, before leaving the Pfieffer home, he must have had the power to will to drive or not to drive; that is, to direct the execution of a clearly conceived plan. When a human being loses consciousness as the result of a diseased condition of his nervous system there is no distinct line over which the mind leaps from the sunlit fields of clear consciousness to the dark canyons of unconsciousness. Surely, there must be, in the case of the epileptic, a period of penumbra when the will is in a state of total or partial paralysis. Under proper guidance the jury should have been permitted to determine whether defendant was suffering a state of clouded understanding or of obstructed will as a result of his epilepsy prior to his departure from the Pfieffer home.

■ The instruction told the jury that if they should find that the defendant was guilty of a reckless disregard of the safety of others in undertaking to make the drive and if they should find that he knew facts which would lead a reasonable man to realize that such a drive would involve a high degree of probability that substantial harm would result to others, *they should find him guilty as charged in spite of the fact that they might find he was unconscious at the time of the accident.* Such is absolutely contrary to the statute which declares one not guilty if at the time he commits a criminal act he is not conscious thereof.

No principle of criminal jurisprudence was ever more zealously guarded than that a person is guiltless if at the time of his commission of an act defined as criminal he has no knowledge of his deed. (Hale's Pleas of the Crown vol. 1, p. 473; *Fain* v. *Commonwealth,* 73 Ky. 183, 188.) "It is a sacred principle of criminal jurisprudence that the intention to commit the crime is of the essence of the crime, and to hold that a man shall be held criminally responsible for an offense of the commission of which he was ignorant at the time would be intolerable tyranny." (*Duncan* v. *State,* 26 Tenn. (7 Humph. 148) 118, 120.) In *State* v. *Lewis,* 136 Mo. 84 [37 S.W. 806], the defendant having pleaded unconsciousness at the time she shot the deceased, the jury was in-

structed to acquit her if they believed from any cause she was so nearly unconscious as not to know what she was doing. In *People* v. *Sameniego* it was declared that where the evidence shows the conscious mind of the accused ceased to operate and his actions were "controlled by the subconscious or subjective mind" the jury should be instructed as to the legal effect of such unconsciousness. (118 Cal.App. 165, 173 [4 P.2d 809, 5 P.2d 653].) ■ A person who cannot comprehend the nature and quality of his act is not responsible therefor. An act done in the absence of the will is not any more the behavior of the actor than is an act done contrary to his will. (*State* v. *Strasburg*, 60 Wash. 106 [110 P. 1020, 1024, Ann.Cas. 1912B 917, 32 L.R.A.N.S. 1216].)

■ The attorney general contends that in order for defendant to prove his unconsciousness at the time of the accident it was incumbent upon him to plead insanity. Such is not the law. (*People* v. *Methever*, 132 Cal. 326, 329 [64 P. 481]; *People* v. *Rothrock*, 21 Cal.App.2d 116, 120 [68 P.2d 364].) ■ The fact that at Pfieffer's house defendant made such statements as "I think I can make it home," which in the case of a normal mental condition would indicate the possession of a clear understanding, did not necessarily signify such ability. Whether he clearly recognized his probable, early collapse was itself a fact for the jury's determination. If they had determined that he was unconscious at the intersection and that such state of being had wholly, or to a material extent, overtaken him before leaving on his fatal drive, the instruction should have authorized his acquittal. Of course, it was proper to direct the jury to ignore the defense of unconsciousness if they did not believe his testimony relative to his early injuries and attacks of unconsciousness, or in the event they believed that his accident was the result of his wilful, bibulous indulgence. ■ A harmful act due to the use of an intoxicating beverage is wilful misconduct, not negligence.

The judgment and the order are reversed.

McComb, J., concurred.

WOOD (W. J.), J.—I concur in the judgment. One who leaves the residence of a friend to drive home should not be held guilty of a violation of section 500 of the Vehicle Code

because he may be mistaken as to his ability to drive an automobile.

The jury should have been instructed in direct and clear language that defendant should be found not guilty if the collision occurred while he was not conscious of his acts because of an attack of epilepsy.