## SMITH v. COMMONWEALTH.

Court of Appeals of Kentucky.

May 28, 1954.

S. M. Ward, Don A. Ward, Hazard, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Justice.

Lee Smith was found guilty of voluntary manslaughter and sentenced to 10 years in prison. The basis of the charge was that Smith ran over and killed Victoria Grigsby with his automobile in such a wanton and reckless manner as to manifest utter disregard for human life. On this appeal Smith insists vigorously that there was not sufficient evidence to warrant the submission of the case to the jury under an instruction on voluntary manslaughter, and the court erred in instructing the jury.

Smith, accompanied by Henry Fugate and Harley Fugate, his brothers-in-law, was driving his 1950 Pontiac automobile up Main Lotts Creek in Perry County during the daylight hours of December 24, 1953, when he killed Victoria Grigsby on a curve in the road. The curve is a left-hand one, with a seven or eight foot shoulder on the right side. To the right of the shoulder there is a steep bank which leads down and over to a creek 60 feet away.

Smith said he had been driving along a straight stretch of road when he entered the curve at 35 or 40 miles per hour. He saw Victoria about 35 to 40 reet in front of him, walking two, or three feet out on the pavement, on his side of the road; that he was afraid to pass her on the inside of the curve so he left the pavement to pass her on the shoulder; and that was the last he remembered until he came to, at which time he was sitting in his car some 200 feet around the curve.

The Fugate boys said that as Smith entered the curve at 35 to 40 miles per hour he stiffened out and pushed down on the accelerator, and as a result the car gained speed and struck Victoria when it was going at a speed of about 45 to 50 miles per hour. The impact threw her off the highway and down the bank. The car proceeded on around the shoulder of the road and then came back onto the pavement, where it skidded around and ran backwards off the highway. The Fugates then got out of the car and ran back to see whom Smith had hit. Upon finding it was Victoria, Harley went back and told Smith who it was. This was the first time Smith knew whom he had killed.

Smith, to substantiate his defense of a blackout, introduced evidence that he had had two other blackouts in the summer of 1953, one which resulted in a wreck in Louisville, and one while eating ice cream in a store. He also introduced the testimony of Dr. Eli Boggs, who, along with Dr. Ralph Angelucci, a well-known neurosurgeon, said Smith was an epileptic, and that the blackouts were mild seizures of epilepsy. The doctors examined Smith after the accident. The Commonwealth showed that on three other occasions in 1953, Smith had blackouts while driving a car. It is contended that Smith knew he was subject to blackouts while driving and that by driving a car he manifested utter disregard for human life.

The Commonwealth introduced Chester D. Potter, Sergeant of Kentucky State Police, who made an investigation of the accident shortly after it happened. Potter said that Smith first left the highway about 144 feet from the point of impact and continued on around the curve with most of the car off the pavement; that the car came back on the pavement and skidded around and ran off the highway; that at the point of impact he found one of Victoria's shoes; that down on the bank he found the place where Victoria was thrown; and that over in the creek 60 feet away he found her other shoe. He said further that he went to the jail and asked Smith if he had had a blackout and Smith said, "No." Smith denies that this question was ever asked him.

John Grigsby, a great-uncle of Victoria who saw the accident from a distance of about 120 yards, said that Victoria was on the shoulder of the road about three or four feet from the pavement when the car, coming at 50 or 60 miles per hour, ran over on the shoulder and struck her, thereby hurling her off the highway and down the bank.

■ The question for our determination is whether a person who is unaware of the fact that he is an epileptic but does know that he is subject to frequent blackouts, even while driving an automobile, is guilty of voluntary manslaughter if he strikes and kills another person with an automobile while in an epileptic blackout. It is a well-recognized principle of criminal law that, if a person is unconscious at the time he commits a criminal act, he can not be held responsible. Fain v. Commonwealth, 78 Ky. 183, 39 Am.Rep. 213. Allegedly Smith was unconscious at the time he struck Victoria, but previous thereto he was conscious and knew that he was subject to frequent blackouts. In fact, within the last nine months before the accident he had had six blackouts; one while driving in Louisville, in which he and his mother were injured; one while driving across a mountain on his way to Indian Creek School, during which a passenger stopped the vehicle by applying the emergency brake; one while driving out of Booneville, during which his passenger stopped the vehicle; one driving from

Campton to Hazard, during which he ran into the ditch; one while sitting in a store eating ice cream; and one while playing with a friend's children in his own home.

 Where a motorist drives his automobile with reckless disregard of, or willful indifference to, the safety of others, it is the equivalent of the intentional doing of an act with a wanton and reckless disregard of its possible results. People v. Freeman, 61 Cal.App.2d 110, 142 P.2d 435. The evidence shows that Smith knew he was subject to frequent blackouts while driving, and the question of whether by driving he manifested a willful indifference to the safety of others should have been submitted to the jury. It follows, therefore, that it was proper to submit the case to the jury under a voluntary manslaughter instruction.

Smith complains of the following instruction:

"The Court further instructs you that if you shall believe from the evidence that at the time and place the defendant ran his motor vehicle, or Pontiac automobile, upon, over or against the said Victoria Grigsby he had a blackout of his mind or had become unconscious and that it was impossible for him to avoid running his automobile upon, against or over the said Victoria Grigsby, by reason thereof; you will find the defendant not guilty, unless you shall further believe from the evidence, to the exclusion of a reasonable doubt, that at said time and place and on the occasion and previous thereto, the defendant knew that he was likely to have such blackouts or unconscious spells and that it was dangerous and hazardous to the lives of others on the highways for him to operate motor vehicles upon the highways, in which event you should not acquit him upon that defense."

 This instruction is erroneous in that it virtually prohibits a person with a physical disability of Smith's character from driving an automobile. Under our view of the case, and in the light of the authorities cited herein, the crucial question is whether Smith failed to do something which a reasonably prudent man would have done under the circumstances. People v. Freeman, 61 Cal.App.2d 110, 142 P.2d 435; 8 Cyclopedia of Automobile Law and Practice, Criminal Liability, sec. 5331, p. 128. Fn. 3. Upon another trial, if the evidence is substantially the same, the following instruction is suggested as a proper one:

"The court further instructs you that if you should believe from the evidence that at the time and place the defendant ran his motor vehicle upon, over or against Victoria Grigsby he had a blackout of his mind, or had become unconscious to such an extent that it was impossible for him to avoid running his automobile upon, against or over Victoria Grigsby; you will find the defendant not guilty; but if you further believe from the evidence, to the exclusion of a reasonable doubt, that at the time and place and previous thereto the defendant knew he was subject to blackouts or to periods of unconsciousness and that he failed to take such precautions in connection with the operation of his automobile as a reasonably prudent man would have taken under the circumstances to avoid injury to others and as a result thereof Victoria Grigsby was struck and killed, then you can not acquit the defendant under this instruction."

 Under the cases of Kelly v. Commonwealth, Ky., 267 S.W.2d 536, and Fairchild v. Commonwealth, Ky., 267 S.W.2d 528, Smith was entitled to two instructions on involuntary manslaughter; one of them being based on gross negligence and the other upon ordinary negligence.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.